*S. C. Townsend* and *E. K. Wilcox,* contra.

---

## JORDY v. DUNLEVIE.

1. Courts will reform a writing so as to speak the real agreement of the parties, in a proper case, but will not reform° a writing into a contract to which the parties did not mutually assent. In such case the remedy to avoid the effect of the writing, if procured by fraud, is rescission and not reformation.

2. A real-estate broker had a claim against the owner of certain standing timber, for commissions' in effecting a sale of it. In an action to recover the commissions he alleged that the owner ·of the timber falsely represented to him that he had not consummated a sale of the timber to a buyer found by the broker, and induced him to accept a certain sum of money in full and complete settlement of all demands for expenses, commissions, or otherwise in connection with the sale of the timber, and to give his receipt therefor; but that the sale had in fact been consummated, and this settlement was procured by fraud. Upon discovery of the fraud he notified the owner of the timber of his disaffirmance of the settlement, but made no offer to return its consideration, and brought suit in the city court of Savannah to recover his commissions. On the trial of the case he tendered for the first time the sum received in settlement, which was refused. Thereupon

he dismissed his action, and made a new tender, which was refused. He then brought the present action in the superior court. The time elapsing between the discovery of the fraud and the tender of the sum received in settlement was sixteen months. *Held:* (*a*) That the action to recover the commissions can not be maintained without a rescission of the contract of settlement. (*b*) That under the Civil Code, § 4305, it is essential to the right of rescission that the party defrauded promptly restore or offer to restore to the other party whatever of value he has received by virtue of the contract. (*c*) That the facts do not show any sufficient excuse for the delay of sixteen months, after the discovery of the fraud, in making an offer to restore to the other party the consideration of the contract of which rescission is sought, and the plaintiff's laches bars him of his action.

JANUARY 23, 1913.

Equitable petition. Before Judge Charlton. Chatham superior court. December 7, 1911.

The petition, which was dismissed on demurrer, alleged substantially as follows: E. V. Dunlevie (the defendant), of Buffalo, New York, was the owner of certain timber in Liberty county, Georgia. On June 4, 1908, he created petitioner, J. N. Jordy (a real-estate broker), his agent to sell the same. Defendant furnished petitioner a prospectus, including blue prints of the timber land, and requested to be kept posted on what he was doing in relation to the sale of the timber. Petitioner informed defendant that he was negotiating with the Byers-Allen Lumber Company for the sale of the timber; that he believed the lumber company to be a probable purchaser on the terms proposed; and that, inasmuch as this prospective purchaser was located in the city of the defendant's residence, in the interest of saving time the defendant might take up the matter directly with the lumber company, on condition that he would protect petitioner for his brokerage. Other correspondence ensued between petitioner and defendant, pertaining to the sale of the timber to the lumber company. On March 9, 1909, defendant informed petitioner that he had sold the timber; whereupon petitioner requested the name of the purchaser, stating that he had spent much time and money, had offered the property extensively, and had promptly furnished defendant with the names of those to whom he had offered the property. Defendant concealed from petitioner the name of the purchaser, and on April 19, 1909, wilfully and falsely asserted to petitioner that he had heard nothing from the Byers-Allen Lumber Company; that he had not sold the timber to that company nor to any other person whose name had

been submitted by petitioner. As an excuse for withholding the name of the purchaser, defendant said he had been compelled to submit to a hold-up by one of the parties purchasing, and it would not do to give the name. Relying on the positive assurance that the defendant had not sold to any of the persons whose names were furnished by petitioner, he gave the following receipt to the defendant: "Received of E. V. Dunlevie of·Buffalo, N. Y., the sum of five hundred dollars in complete, full, and final settlement of all claims and demands against him of every kind and description, for expenses, commissions, and otherwise, for and in connection with his timber property of about 18,000 acres in Liberty County, Georgia, which property I have been endeavoring to sell to Messrs. Neely, Gillman, and others, and any other matters." This receipt was written by defendant, who made a false pretext, fully described in the petition, to have it signed that day, and for petitioner to leave by next train on a fictitious business mission to another State. Three days afterwards he wrote to defendant to add these words to the receipt: "This settlement is accepted upon the condition and assumption that the lands have not been sold to any parties to whom the same were presented either directly or indirectly by me." Receiving no reply to this letter, on May 5, 1909, he wrote to ·defendant that the receipt was given on the distinct understanding that the buyers of the property did not receive their information from petitioner. On May 5, 1909, defendant wrote to petitioner, and in his letter declared that "the parties to whom I have contracted the Georgia property are not parties who were presented to me by you as customers of yours. I assure you positively of this fact, nor were they introduced to me by any party with whom you were in correspondence; so you would not be entitled to any commission from him." The statement contained in this letter lulled the suspicion of petitioner, and it was not until August, 1909, that he learned that the defendant, on February 27, 1909, had sold the timber to the Byers-Allen Lumber Company, which became the purchaser of the timber as the result of petitioner's exertions; petitioner having found in the lumber company a purchaser ready, willing, and able to enter into a valid contract fixed by the defendant for the purchase of the property, which company, being then and there ready, able, and willing to buy, did then and there actually buy on the terms stipulated by the defendant for the

timber. Petitioner brought defendant and the lumber company together, and the sale was made through the agency of petitioner. The sale to the lumber company was consummated by written conveyance, on February 27, 1909, upon the same terms as were proposed by the company to petitioner on November 27, 1908. Petitioner's commissions according to his contract amount to $26,500, for which he sues. The receipt of April 17, 1909, was not an accord and satisfaction, for the reason that he did not know at the time it was executed that the sale of the timber had been made by defendant to the lumber company; it was given in payment of petitioner's services in negotiating a sale of the timber to Neely and Gillman; and a controversy having arisen as to the refusal of the defendant to sell to these persons, the money was accepted solely in settlement of this controversy. The words, "and others, and any other matters," were either not there at the time the receipt was signed and have since been added, or; if they were there, they were not observed by petitioner. The receipt was obtained by fraud as above set forth. Upon the discovery of the fraud practiced upon him, petitioner wrote to defendant two letters asking about the sale to the lumber company. Petitioner was referred by defendant to his lawyers, to whom he addressed letters on August 26, 1909, and September 1, 1909. Failing to get a reply, he brought suit on October 29, 1909, in the city court of Savannah, to recover his commissions. At the trial term, on December 19, 1910, he tendered to the defendant $500 and interest from April 19, 1909. The tender was refused. Thereupon petitioner dismissed his action in the city court, and renewed his offer of tender on the same day, which was again refused. Whereupon he paid up the costs and renewed his action in the superior court. The prayer of the petition was, to reform the receipt given by him by striking therefrom the words "and others, and any other matters;" that the receipt be declared fraudulent and void; and for judgment, etc.

*Wilson & Rogers* and *P. W. Meldrim,* for plaintiff.

*Adams & Adams* and *Gignilliat & Heidt,* for defendant.

EVANS, P. J. (After stating the foregoing facts.)

1. The gravamen of the complaint is that the defendant fraudulently represented that he had not sold the timber to any of the plaintiff's customers, and because of such fraudulent representation he settled his claim for commissions for the sale of the timber for

five hundred dollars. The plaintiff charges that the defendant misrepresented the matter to him, deceived him, and that the settlement was obtained by deceit. He does not charge that he and the defendant agreed on a contract of settlement, such as would be expressed in the receipt after eliminating the words which he alleges he did not observe. Courts will reform a writing to speak the real agreement of the parties, in a proper case, but will not reform a writing into a contract to which the parties did not mutually assent.

2. We will not enter into any discussion of the plaintiff's right to recover his commissions (see D*oonan* v. *Ives & Krouse, 73 Ga.* 295), for the reason that he is estopped by his acceptance of five hundred dollars in satisfaction of all sums due him for services. We will assume that he earned his commissions, and undertake to show that he surrendered his right to recover them by the acceptance of the five hundred dollars under the circumstances alleged in the petition. The plaintiff had negotiations with several prospective purchasers of the timber, whom he referred to the defendant. He then entered into a contract of settlement with his client, by which he received five hundred dollars, which was accepted in complete, full, and final settlement of all claims and demands against the defendant for expenses, commissions, or otherwise, in connection with the sale of the timber on the Liberty county lands. This amounted to an accord and satisfaction of the plaintiff's right to commissions under his contract, and forecloses any action therefor, unless he is entitled to rescind the settlement agreement on the ground of fraud.

While it is true that fraud vitiates a contract, yet such contract is nevertheless not void, but voidable only, at the instance of the person defrauded.. "A contract may be rescinded at the instance of the party defrauded; but in order to the rescission he must promptly, upon discovery of the fraud, restore or offer to restore to the other whatever he has received by virtue of the contract, if it be of any value." Civil Code, § 4305. As appears from the marginal reference, the foregoing section was a codification of the principle announced and applied in the case of *East Tennessee &c. Railway Co.* v. *Hayes, 83 Ga.* 558 (10 S. E. 350). An examination of that case, as well as those cases cited in the opinion, discloses that the principle which was incorporated in the code

section is predicated on the broad equitable doctrine that he who asks equity must do equity. If a party intends to rescind a contract on the ground of fraud, he must promptly disown it, return the property, and restore the status. Some of the authorities declare that he must act *at once*. Grymes *v.* Sanders, 93 U. S. 55 (23 L. ed. 798). Others demand action with *reasonable promptitude*. Bigelow on Fraud, 436. But in the great mass of adjudicated cases, of which Gould *v.* Cayuga National Bank, 86 N. Y. 75, may be said to be a leading exponent, the requirement is that one who seeks to rescind an accord and satisfaction on the ground of fraud must *promptly* on the discovery of the fraud restore, or offer to restore, to the other party whatever of value he has received by virtue of it. What is the meaning of the word "promptly" as used in the statute? Some of its synonyms are, at once, quickly, readily, seasonably, timely, expeditiously. Webster's New International Dictionary. When the fraud is discovered the party defrauded is put to his election to disaffirm the contract. He should not delay without cause. He has in his possession the property or money of the other party, which he can not retain if he intends to rescind. He must therefore proceed with his offer to restore what he has received, with that promptitude which the nature of the case and environment of the circumstances would require, as manifesting an intention to treat, from the discovery of the fraud, what he has received as the property of the other party. What might be termed as prompt action in one case might in another instance be regarded as inexcusable laches.

There is a statute in California very similar to ours. It declares that the party "must rescind promptly upon discovering the facts which entitle him to rescind; and . . he must restore to the other party everything of value which he has received from him under the contract," etc. California Civil Code (1909), § 1691. Under this statute it has been held that a delay of three months after the discovery of the fraud, in offering to return what was received, prevented a rescission of a contract to purchase stock in a corporation. Marten *v.* Burns etc. Co., 99 Cal. 355 (33 Pac. 1107). In another case four and one half months was held to be too long a time to wait before offering to restore the property. Gamble *v.* Tripp, 99 Cal. 223 (33 Pac. 851). No reasonable excuse was offered in either case for the delay in making the offer

to restore the status.  Our statute requires restoration (or an offer
to restore) of whatever of value has been received, as a condition
precedent to rescission.  It is not sufficient that a party on dis-
covery of the fraud gives notice to the other party of his intention
to disaffirm the contract.  He must go further and offer to restore
the status, as required by the statute.  When the opposite party
gets the notice of his election to rescind the contract, he has the
right, under the law, to expect the prompt return of his property
in the possession of the person claiming to be defrauded.  If the
latter waits an unreasonably long time to tender it back, the other
party may well assume an abandonment of the effort to rescind.
After discovery of the fraud, and notice of an intention to rescind
the contract, what equitable right has the defrauded party to re-
tain or use the consideration of the alleged fraudulent contract,
when the statute is mandatory that he shall promptly offer to
return it?  Such conduct would be inconsistent with his previous
notice to rescind.  If he waits unreasonably long before making a
tender, he forfeits his right to rescission.  In the case in hand
the plaintiff waited 16 months after the discovery of the fraud, and
after giving the defendant notice of his intention to rescind the
contract, before offering to return the money which he received in
consideration of a settlement of his commission.

Let us see if there is any excuse for this long delay in tender-
ing back the consideration of the contract of settlement.  Imme-
diately upon the discovery of the fraud the plaintiff began an action
in the city court of Savannah to recover his commissions.  On
the trial of the case, 16 months thereafter, he made a tender of
the money he had received from the defendant.  This tender was
ineffectual to save the action, as was held in the case in 83 *Ga.*,
cited supra.  The suit in the city court was dismissed.  The tender
was renewed and declined, and about six months after the dis-
missal of the city-court suit the present action was brought.  It is
clear that the suit in the city court did not relieve the plaintiff of
the necessity of returning the money, and certainly did not prevent
him from making an earlier tender.  So this can not serve in any
way to excuse the plaintiff's laches in making the tender.

It is no answer to the charge of laches to say that tender is ex-
cused because, under the facts alleged, and admitted on demurrer
to be true, the plaintiff would recover largely in excess of the

amount he received. The acceptance of a sum in settlement of the original cause of action discharged all liability thereon, so long as the contract of settlement is not rescinded. This was expressly ruled in *East Tenn. Railway Co.* v. *Hayes,* supra.

The plaintiff waited sixteen months after the discovery of the fraud before offering to return the money accepted in settlement of his commissions for the sale of the land. This, in the absence of some excuse shown for the delay, is certainly not the prompt action required by the code as a condition precedent to rescission. There was no error in dismissing the petition on demurrer.

*Judgment affirmed.* *All the Justices concur.*