CHRISTIAN BAUER, Respondent, v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, a Corporation, Appellant.

(198 N. W. 546.)

**Insurance — complaint held to state cause of action on policy, and not for damages for fraud.**

1. Complaint examined, and for reasons stated in the opinion, *held*, to state a cause of action upon the policy of insurance and not for damages on account of fraud.

**Insurance — evidence held to support finding that agreement to compromise loss procured by fraud.**

2. For reasons stated in the opinion, it is *held*, that there is sufficient testimony in the record to support a finding by the jury that an agreement to compromise the loss under the policy was procured by fraud.

**Contracts — legal justification for delay in rescission for fraud must be shown.**

3. Section 5936, Comp. Laws 1913, requiring rescission on account of fraud to be promptly made, is mandatory; and if rescission be not promptly made, legal justification or excuse for the delay must be shown.

Note.—(3) Prompt election required to rescind contract for fraud, see 6 R. C. L. 935; 2 R. C. L. Supp. 249.

51 N. D.—1.

Cancellation of instruments — contracts — where evidence of prompt rescission for fraud undisputed, question is for court; where evidence as to prompt rescission conflicting, or where different conclusions might be drawn, question for jury; delay in rescinding for fraud must .be explained.

4. On the question of whether the defrauded party acted promptly as required by the statute, it is held,

(a) If the facts in regard to the delay be undisputed, it may be a question of law if reasonable minds could draw but one conclusion therefrom.

(b) Where the proof is conflicting, or where reasonable minds might draw different conclusions from evidence not conflicting, the question is one of fact for the jury and not one of law for the court.

(c) Where plaintiff has been guilty of great delay in rescinding after discovery of the grounds for rescission, he must produce evidence explaining his delay.

Contracts — right to rescind for fraud waived by unexcused delay, although not prejudicial.

5. The right to rescind on account of fraud is waived by unexcused delay, under § 5936, Comp. Laws 1913, although no prejudice or injury be shown as a result of the delay.

Sufficiency of evidence.

6. Held, for reasons stated in the opinion, that there is evidence sufficient to support a finding by the jury that the tender of return of the consideration was made in good faith and that the parties were prepared to make the tender good if the offer of return had been accepted by the defendant.

Insurance — finding that insurer's agent had authority to settle sustained.

7. Held, for reasons stated in the opinion, that there is sufficient evidence to support a finding by the jury that the agent of the defendant had authority to make a settlement of the claim arising under the policy.

Compromise and settlement — settlement defined.

8. A "settlement" is an agreement by which two or more persons who have dealings together so far arrange their accounts as to ascertain the balance due from one to the other; "settlement" is an act or process of adjusting, determining or composing doubts or differences.

Opinion filed January 5, 1924.   Rehearing denied April 23, 1924.

Appeal and Error, 40 C. J. § 3234 p. 1195 n. 92.   Cancellation of Instruments, 9 C. J. § 105 p. 1214 n. 76; § 193 p. 1253 n. 88; § 199 p. 1258 n. 54.   Contracts, 13 C. J. § 670 p. 616 n. 98; § 671 p. 616 n. 99, p. 617 n. 7 New.   Fraud, 27 C. J. § 128 p. 18 n. 33, 40.   Insurance, 33 C. J. § 698 p. 37 n. 76 New; § 706 p. 40 n. 61; § 794 p. 82 n. 95.   Settlement, 35 Cyc. p. 1444 n. 22, 23 New.

Appeal from the District Court of Morton County, North Dakota, *Berry,* J.

Reversed.

*Barnett & Richardson* and *J. A. Heder,* for appellant.

"What constitutes a reasonable time within which to declare a rescission is ordinarily a question of fact. It may, however, be a question of law, if the circumstances are such as to demonstrate unreasonable delay." Mfg. Co. v. Troll, 69 Mo. App. 480.

"Where the delay is for such period as would be unquestionably without cause, the court may so declare as a matter of law." Publishing Co. v. Hull, 81 Mo. App. 280.

"What is to be regarded as a reasonable time is, when the facts are clear, a matter of law. Where the proof is conflicting, it is a mixed one of law and fact." Wiggins v. Burkham, 77 U. S. 129; Cookingham v. Dusa (Kan.) 21 Pac. 95; Swan v. Great Northern, 168 N. W. 675; Gilmore v. Electric Co. 172 N. W. 111.

*Jacobsen & Murray* and *Norton & Kelsch,* for respondent.

"A witness may be discredited by inconsistencies or contradictions in his testimony, or by inconsistencies between his testimony and statements formerly made by him." 40 Cyc. 2585.

"The credibility of witnesses is a question for the jury. . . . A jury may accept as true, or reject as false all the testimony of a witness, or believe a part of his testimony, and reject another part, and has a right to disregard the positive testimony of a witness if they are satisfied from other evidence that it is erroneous, even though they do not think it intentionally false." 40 Cyc. 2593; Burns v. Jackson (Cal.) 200 Pac. 80.

"It is for the jury and not the court, to resolve conflicts in the testimony of a witness." Puckett v. Sherman & Reed (Mont.) 205 Pac. 250.

"When the evidence offered by a plaintiff is conflicting, and certain portions of his own testimony are in conflict with other portions thereof, such evidence should be submitted to the jury, and it is error to sustain a demurrer thereto." Smith v. Schriver, 138 Pac. 584.

"The rule is well settled that questions as to which there is a conflict must be submitted to the jury." 38 Cyc. 1578.

Signature procured to instrument under misrepresentation, even though signer can read, constitutes fraud.   13 C. J. 371, § 250.

A bona fide dispute and mutual concessions are vital elements in an accord.   1 C. J. 554, § 75.

"The question whether an offer to restore was made within a reasonable time after the discovery of the fraud, where there are no facts involved except the simple fact of the length of time that has elapsed, is a question of law; but where disputed facts involving questions of excuse, of time of discovery of the fraud, etc., are to be passed on, the question is a mixed one of law and fact."   9 C. J. 1268, § 199; 9 C. J. 572; Gatling v. Newell, 9 Ind. 572; Luckenbach v. Thomas (Tex. Civ. App.) 166 S. W. 99; Texas etc. R. Co. v. Jowers (Tex. Civ. App.) 110 S. W. 946; Garrett v. Finch, 107 Va. 25, 57 S. E. 604.

"Acts of fraud by an agent, committed in the course of his employ, are also binding on the principal, even though the principal did not in fact know of or authorize the commission of the fraudulent acts."   2 C. J. 849, § 534.

"It is universally agreed that the party seeking to use the former testimony must show that it is impossible for him to procure the attendance and testimony of the witness;  . . .   The proof in this respect should be full and convincing, but the sufficiency of such proof is largely within the discretion of the trial court, which will not be interfered with unless an abuse of discretion is shown."   22 C. J. 433, § 517.

JOHNSON, J.  This action was brought in the district court of Morton county and resulted in a verdict and judgment in favor of the plaintiff. The action is brought on account of an insurance policy issued by the defendant to the plaintiff, according to the terms of which the defendant agreed to indemnify the plaintiff against crop failure due to hail, drouth, hot winds, etc.   The complaint alleges the corporate character of the defendant; the execution of the policy and a payment of the premium by plaintiff; that loss was incurred thereunder and adjusted by defendant; that by fraud and false representations the defendant induced the plaintiff to accept in full settlement a return of the premium paid, with the promise of the defendant to pay the plaintiff a larger percentage than the premium upon the loss, if any other policy

holder received or collected more than the defendant company; that the defendant promised, as a part of the consideration for the settlement and adjustment, to pay plaintiff the same percentage paid other policy holders; that the defendant, at the time the adjustment was made, presented to plaintiff a paper to sign, which was represented to be a receipt for the amount of money the defendant was then paying the plaintiff; that plaintiff relied upon and believed the representations of the adjuster of the defendant; that such paper in fact purported to be a release of defendant from all liability under the policy and a full settlement of his claim; that plaintiff, at the time of the settlement, returned the policy to the defendant. It is then alleged that all of the foregoing representations were false; that the company was not in difficult financial straits or threatened with bankruptcy; that it was able to pay in full all losses, including plaintiff's; that other policy holders were paid more than the premium, to wit, a full 100 per cent of the loss; and that the plaintiff claims the full amount due on the policy after allowing credit for the amount paid, to wit, $126.70. It is then alleged that when the plaintiff became aware of the fraud and misrepresentations he cancelled the settlement and release and offered to restore to the defendant the amount paid it upon condition that the defendant would restore to plaintiff what it received from him, namely, the policy and the release; and that the defendant refused to restore to this plaintiff the policy and the release which it received in settlement and refused to accept plaintiff's offer of cancellation. It is then alleged that the plaintiff has been damaged in the sum of $570, no part of which has been paid, except $126.70.

To this complaint the defendant answered, admitting the corporate character of the defendant, the execution of the policy and the payment of the premium thereunder. The defendant further admits that it was not bankrupt, that certain holders of crop policies would not accept a return of the premium or settle for a return thereof; it further admits the execution of the release by the plaintiff and described in the complaint. Otherwise, the answer denied the allegation of the complaint. As an affirmative defense, the defendant alleges that the policy was obtained by fraud and misrepresentations as to the condition of the crop at the time the policy was issued; that thereafter, the defendant, upon knowing the facts, denied liability under the policy and offered

to return the premium paid thereon and that such offer was accepted. It is further alleged that the policy became void and of no effect, because of fraud and misrepresentation and false swearing in procuring the same. It is then further alleged, as affirmative defense, that the plaintiff and defendant entered into an agreement of accord which was fully satisfied and performed and that the plaintiff accepted the sum of $127.05 in full satisfaction, compromise and indemnity for all claims on account of the loss of the crop of the year 1917, described in the policy. Upon the issues thus framed, the case was tried to a jury. A verdict was returned in favor of the plaintiff for the sum of $471.95, with interest from November 1, 1917, at 6 per cent.

At the close of plaintiff's case and at the close of the entire case, motions for a directed verdict were made and denied; after the verdict, a motion for judgment notwithstanding or for new trial was made and denied.

Thereafter the defendant appealed from the order denying the motion for judgment notwithstanding the verdict or for a new trial and from the judgment entered upon the verdict.

Counsel for the defendant contends that the plaintiff is suing upon the policy, and, in order to avoid the effect of the release and compromise settlement, the defendant must show that the settlement was procured by fraud and that he has properly rescinded and offered to return the consideration. Counsel for the respondent in the oral argument stated that respondent was suing on the policy or for fraud. We have examined the complaint carefully and compared it with the complaint in the case of Rokusek v. National Union F. Ins. Co. 50 N. D. 123, 195 N. W. 300, and have come to the conclusion that there is no substantial difference in the complaints. In that case we said: "However, after a careful consideration of the pleadings and the record, it is clear to us that the action is not one for damages on account of fraud."

Counsel for the plaintiff, both in the brief and in the oral argument, expressly says that plaintiff is not relying on an accord. He stands on the policy, claiming a rescission of the compromise settlement on account of the fraudulent representations as to the inability of the defendant to pay on account of the large losses during the year 1917. This narrows the issues materially. There is really but one question involved, namely, was there such a rescission of the compromise settle-

ment as entitles the plaintiff to recover the full amount of the loss under the policy?

It has been held by this court many times under the statutes that the defrauded party to a contract has the choice of two remedies: he may affirm the contract and recover damages for the injuries sustained by reason of the fraud, or he may rescind the contract, return what he has received under it and recover any sum paid by him pursuant thereto. These remedies are mutually inconsistent and exclusive; they are not available in the same action; one is founded on the theory that the contract is in full force, while the other assumes it has ceased to exist. When the defrauded party has exercised his option to rescind, his right of election is exhausted and he must abide by his decision. Sonnesyn v. Akin, 14 N. D. 248, 257, 104 N. W. 1026. That the respondent has proceeded on the assumption that the compromise agreement was rescinded by him is too clear for argument, and is in fact expressly stated by him. We hold, therefore, in the case at bar, that the action is upon the original policy; that the contention of respondent, in order to escape the legal consequences of Exhibits A and B, as defined in Rokusek v. National Union F. Ins. Co. supra, in effect is that they were procured by fraud and misrepresentations of the defendant; that, upon discovering the fraud, he rescinded the compromise settlement and, within the provisions of § 5936, Comp. Laws, 1913, offered to return the consideration; and that, having rescinded, he is entitled to full recovery for the loss under the policy.

We held likewise, in the case cited, that Exhibits A and B constitute, on the record made, an executed accord and extinguished fully the obligation of the defendant under the policy, unless they were procured by fraud on the part of the defendant. It would seem, therefore, incumbent upon the plaintiff to offer sufficient evidence to justify a finding by the jury of fraud in procuring the execution of these exhibits; and that the plaintiff must further show that he has properly rescinded the compromise settlement thus procured.

The appellant strenuously contends that the respondent understood and knew that he was signing a release and a full settlement when he executed Exhibits A and B. Assuming that appellant's contention is correct and that there was not sufficient evidence to form a question of fact for the jury in this regard, nevertheless, if the respondent was

induced by fraud and false representations to execute the exhibits and to make the compromise agreement, evidenced thereby, he had, upon discovering the fraud, the right to rescind upon returning or offering to return the consideration. We have examined the evidence and find that there is evidence in the record from which a jury would be warranted in finding that the respondent agreed to a compromise settlement because of the representations of the adjuster that the insurance company was unable to pay more and that it did not pay others any more; that the adjuster was authorized by the manager of the Northwestern Department of the appellant to make such representations; and that they were false in fact. The verdict of the jury upon these points is conclusive and has substantial support in the evidence.

The next and much more serious question is whether there was a sufficient rescission. Section 5936, Comp. Laws, 1913, reads as follows:

"Rescission when not effected by consent can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

"1. He must rescind promptly upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence or disability and is aware of his right to rescind; and,

"2. He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

The adjustment is dated September 14, 1917, and the draft (Exhibit B) is dated October 18, 1917. Appellant contends that the rescission was not prompt within the requirements of the statute and must be held of no effect. If the facts in regard to the delay be undisputed, it may be a question of law if reasonable minds could draw but one conclusion therefrom; where, however, the proof is conflicting, or where reasonable minds might draw different conclusions from evidence not conflicting, the question is one of fact for the jury and not one of law for the court. Wiggins v. Burkham, 10 Wall. 129, 19 L. ed. 884; World Pub. Co. v. Hull, 81 Mo. App. 280; Graton & K. Mfg. Co. v. Troll, 69 Mo. App. 480; 9 C. J. 1258. "Where plaintiff has been guilty of great delay in instituting proceedings to cancel an instrument after the

discovery of grounds for cancellation, he must produce evidence explaining his delay." 9 C. J. 1253; Skinner v. Scott, 29 Okla. 364, 118 Pac. 394.

As bearing upon the question of whether respondent proceeded promptly after discovering the fraud and after he became aware of his right to rescind, attention should be drawn to the fact that the respondent commenced suit upon the policy in 1918 and defendant answered in August of that year, alleging the compromise settlement evidenced by Exhibits A and B. Several months thereafter respondent voluntarily dismissed his action and in April, 1919, sent Exhibit 3 to the appellant at Waseca, Minn. Exhibit 3 purports to be a rescission on the ground of fraud and an offer to return the consideration upon the condition that the appellant return the policy and the release delivered at the time the compromise settlement was made. Suit was again commenced in September, 1919, and issue joined thereon in October following. In explanation of the delay, the respondent claims that he was misled into signing Exhibits A and B upon the representation and belief that they were merely receipts; that, therefore, knowledge of the fraud and that the exhibits evidenced a full settlement was not obtained by the respondent until after the defendant answered, to wit, in August, 1918, about eight months before the attempted rescission took place. Plaintiff, however, testifies that he found out something with reference to the financial condition of the defendant in the spring of 1918 and thereupon engaged counsel. It was the alleged misrepresentation as to the financial condition of the defendant which plaintiff claims induced him to agree to the compromise he claims was made, but which is different from that set up by defendant and evidenced by exhibits A and B. Presumably he then discovered the fraud, at least sufficiently to require him to make inquiry and, if he failed to make inquiry, to charge him with constructive notice. Comp. Laws, 1913, §§ 7289, 7290. The statute, § 5936, Comp. Laws, 1913, is mandatory and rescission on the ground of fraud must be made promptly, or, if not made promptly, legal excuse or justification for the delay must be shown. Annis v. Burnham, 15 N. D. 577, 583, 108 N. W. 549; Gamble v. Tripp, 99 Cal. 223, 33 Pac. 851; Schneider v. Henley, 61 Cal. App. 758, 215 Pac. 1038. The right to rescind is waived by unexcused delay, although no prejudice or injury be shown as a result thereof.

Annis v. Burnham, 15 N. D. 583.  We think that the respondent, having wholly failed to offer any evidence in justification or excuse of the delay of a year in rescinding the compromise settlement, has not acted with the promptness required by the statute.  A delay of four or five months in rescinding or offering to rescind after discovering the fraud has been held to be fatal by the courts of California, construing a statute identical with our own.  Gamble v. Tripp, 99 Cal. 223, 33 Pac. 851; Marten v. Paul O. Burns Wine Co. 99 Cal. 355, 33 Pac. 1107; see also Jordy v. Dunlevie, 139 Ga. 325, 77 S. E. 162; see also Annis v. Burnham, supra.  There is no dispute as to the facts as to whether rescission was promptly made.  The general rule then is, as heretofore stated, that the question whether the rescinding party acted with due promptness is one of law for the court.  Black, Rescission & Cancellation, § 547.  We are constrained to hold that the attempted rescission by the respondent was not promptly made, and, no excuse having been offered for the delay, was, therefore, wholly ineffective.

The compromise settlement, evidenced by Exhibits A and B, is, therefore, still in effect and the right to rescind the same on account of fraud has been lost by delay.  The unexecuted accord having been withdrawn from the case by counsel for the respondent, we cannot properly inquire into the sufficiency of the evidence to support the claim that an accord was entered into whereby defendant agreed to pay plaintiff more than the equivalent of the premium if other policy holders in the vicinity received more.  If the suit had been brought and tried on the alleged unexecuted accord, no questions as to rescission or return of the consideration would have been presented.  Rokusek v. National Union F. Ins. Co. 50 N. D. 123, 195 N. W. 300; Lehde v. National Union F. Ins. Co. 46 N. D. 162, 180 N. W. 56.  The question as to the right of the plaintiff to recover on the theory of fraud or on the unexecuted accord is not involved and nothing is intended to be said herein upon that question; plaintiff fails because he has elected to rely on a rescission which he failed to make in conformity with mandatory provisions of the statute.

In view of the possibility of another trial of this case or of other cases growing out of similar transactions, we have examined some other

questions raised on this appeal, which, however, might have been passed over because of the view heretofore expressed in this opinion.

It is contended, in effect, that the attempted rescission was not complete and sufficient because the tender of the return was not in good faith in this, that the attorneys for the respondent, who made the tender, neither had the authority to do so nor the means to make it good. Mr. Kelsch, one of the attorneys who signed the notice of rescission, testified that arrangements had been made by his firm whereby the money would have been paid if the tender had been accepted by the appellant. It should be noted furthermore that in the notice of rescission and the offer to return, the respondent asked the appellant to indicate where he desired to receive the consideration and deliver the policy and the release. The appellant never answered. Neven, the manager of the northwest department, testified that he saw the letter of rescission in April, 1919, read it, and stated that the appellant stood on and intended to stand on the proposition that a binding compromise settlement had been made with the respondent. Upon the whole record, we think the evidence supports a finding by the jury that the tender was made in good faith and that the parties were prepared to make it good if the offer of return had been accepted by the appellant.

It is contended by the appellant that there is no competent evidence to support a finding that the adjuster had authority to promise to pay the respondent more than the agreed settlement in the event that others holding similar policies were paid more than the percentage agreed to be received by the respondent under the compromise settlement. The record contains the testimony of the former assistant secretary and manager of the Northwestern Department, Neven, who testified, among other things, that the adjuster had authority "to go and make settlements with these farmers; that is what they were hired for." We think that authority to make a settlement with the insured is broader than authority to make an adjustment of losses; the jury were justified in finding from the evidence that the adjuster had the authority, not only to adjust the loss and determine the amount thereof, but to make settlements therefor with the insured. A settlement has been defined as "an agreement by which two or more persons who have dealings together so far arrange their accounts as to ascertain the balance due from one to the other." Bouvier's Law Dict. See also Jackson

v. Ely, 57 Ohio, St. 450, 459, 49 N. E. 792. According to Webster's New International Dictionary, one definition of the word "settlement" is: "act or process of adjusting or determining; composure of doubts or differences; . . . as, settlement of controversy, of accounts, etc."

The actions growing out of the circumstances that form the basis of the case at bar illustrate the embarrassment to both court and counsel that results from the failure or refusal to proceed upon some definite or ascertainable theory. See Rokusek v. National Union F. Ins. Co. supra. Ordinarily, it involves no hardship upon a party, in a suit of this character, to try his lawsuit upon a definite theory. To do otherwise unduly burdens and multiplies the difficulties of the trial court in ruling upon objections to evidence, motions of counsel and in giving instructions to the jury. If counsel in this case predicated his cause of action upon damages growing out of fraud and deceit, fairness to the trial court required that he should so indicate; if, on the other hand, the theory of the plaintiff in the trial court was that the suit was upon the policy and that he had elected to rescind the compromise agreement on the ground of fraud, that should have been made plain. Substantially all the practice questions that would be likely to arise in connection with any theory upon which this lawsuit could be tried have been settled in this jurisdiction; the practice of training a legal blunderbuss upon the jury or the trial court tends to confusion and uncertainty and should not be encouraged.

Inasmuch as it is suggested that the plaintiff may, on another trial, be able to excuse by proper evidence, the delay in rescinding, we think that he should be afforded the opportunity. It seems a wholly needless expense, however, to require a new trial on all issues on which both parties have had a fair trial. The judgment of the trial court is, therefore, reversed and the case remanded for a new trial upon the single issue of whether the plaintiff had legal justification or excuse for the delay in rescinding the compromise agreement.

CHRISTIANSON, BIRDZELL, and NUESSLE, JJ., and JANSONIUS, Dist. J., concur.

Mr. Chief Justice BRONSON, being disqualified, did not participate; Honorable FRED JANSONIUS, of the Fourth Judicial District, sitting in his stead.