Phillip FEDORENKO and Elizabeth Fedorenko, Plaintiffs and Respondents,

v.

M. B. RUDMAN, Defendant and Appellant.

No. 7495.

Supreme Court of North Dakota.

July 2, 1955.

334

Williams & Buehler, Garrison, for plaintiffs and respondents.

Harold A. Pollman, Williston, for defendant and appellant.

JOHNSON, Judge.

On October 30, 1952, the plaintiffs commenced an action against the defendant, praying for a reconveyance of 7/16ths of the minerals granted by them to him by a mineral deed dated July 22, 1949, and covering and describing:

The South Half of the Northwest Quarter (S½NW¼), and Lots 3 and 4, Section 1, Township 149 North, Range 78 West of the 5th P.M., and the East Half of the Southeast Quarter (E½SE¼) of Section 35, Township 150 North, Range 78 West of the 5th P.M., McLean County, North Dakota,

of which the plaintiff, Phillip Fedorenko, was the title owner.

The mineral deed executed by the plaintiffs purported to convey to the defendant an undivided one-half interest in and to all the oil, gas and minerals in and under and that may be produced from the land above described.

The complaint alleges that the mineral deed was obtained by one W. L. Braun, an agent of the defendant, by fraud. The plaintiffs, in that connection, allege that they are somewhat unfamiliar with the English language; that it is not their native tongue, and that they relied upon certain false and fraudulent representations made by the agent as to the purpose and effect of said mineral deed. They set forth representations that the mineral deed meant nothing; that it merely went with the oil and gas lease; that the deed would terminate at the end of a period of not more than ten years; that if the lease was canceled for nonpayment of rentals, the deed would be canceled also; that additional consideration for the deed would be paid annually for the period it remained in effect; that the deed did not affect the plaintiff's rights to the oil in or under the land; it only affecting solid minerals as distinguished from oil and gas; that "the legal effect of the lease and deed would be to give the defendant one-half of all minerals and one-sixteenth of all oil and gas produced, thereby implying that the ownership of the same remained in the plaintiffs." It is alleged that these representations were false and fraudulent as the agent of the defendant well knew and that they were made for the purpose of defrauding the plaintiffs and that the plaintiffs relied on the representations made and signed the mineral deed without reading it; and that they had only recently discovered that such representations were false and fraudulent.

The complaint sets out also that prior to the commencement of this action, the defendant conveyed to a third party a one-sixteenth interest in the minerals purportedly conveyed by the mineral deed and that the defendant claims to retain a seven-sixteenths interest. The plaintiffs pray that the defendant be ordered to reconvey a seven-sixteenths interest in the oil and gas and minerals to the plaintiffs and that they have such other relief as may be just and equitable, together with costs.

The defendant answered specifically denying that any portion of the transaction set forth in the plaintiff's complaint was procured by fraud, and further specifically denying the specific allegations of false and fraudulent representations made to the plaintiffs and asked for a dismissal of the action.

This action was tried to the court without a jury on the 6th day of April, 1954. The trial court found for the plaintiffs and the defendant appeals and asks for a trial de novo.

■ The trial court found as a fact that the lease and deed were not read to the plaintiffs; that the mineral deed was not explained to them; that the plaintiffs thought or understood that they were only signing an oil and gas lease and that neither knew or understood that they were signing a mineral deed. It concluded as a matter of law that no agreement was reached between the plaintiffs and the defendant for the execution of the mineral deed; "that there was no meeting of the minds of the parties as to such deeds, and no contract between the parties at any time as to said deed or the oil, gas and minerals purportedly conveyed thereby." The findings of the trial court are entitled to appreciable weight. Gunsch v. Gunsch, N.D., 67 N.W.2d 311.

The court required repayment or tender by the plaintiffs of $27 representing the original stated consideration for the mineral deed, less the amount by which the annual delay rentals of the oil and gas lease after July 22, 1949, were reduced by reason of the purported ownership of the defendant of a one-half interest in the oil, gas and minerals, and required the defendant upon such deposit made within thirty days after entry of judgment, to reconvey a seven-sixteenths mineral interest in the lands heretofore described to the plaintiffs, or in absence thereof that the judgment should constitute a reconveyance. The tender was made as required by the trial court. Judgment was entered on the 17th day of June, 1954.

The plaintiffs testified at length concerning the execution of the oil and gas lease and the mineral deed. None of that testimony offered relates to the allegations of fraud and misrepresentation set forth in the complaint. The plaintiffs categorically deny that they ever knew that they had signed a mineral deed. They state they intended to sign only an oil, gas and mineral lease. They deny that Mr. Braun ever made mention of a mineral deed and testified that the original lease and the copies thereof and the mineral deed and the copies thereof, at the time they executed them, were so placed as to prevent them from ascertaining the nature of each instrument. Mr. Braun, the agent left with them a copy of the oil, gas and mineral lease and of the mineral deed.

The trial court, in discussing the issues involved in the action, states that it was his belief that there was "no meeting of the minds" of the parties as to the contracts for mineral deeds. The memorandum opinion of the trial court deals not only with this case but with the case of Harry Pozarnisky and Anna Pozarnisky, plaintiffs, also against the defendant in this action. Although these cases were consolidated for the purpose of trial, they were briefed and presented separately in this court. The court asserted that it was his belief that all the parties could have acted in good faith and arrived at the same results; that Mr. Braun thought he had explained the matter, but that the plaintiffs did not understand him. There is no finding of fraud, but merely a finding that the parties did not understand each other, and therefore, there was no contract or agreement concerning the execution of the mineral deed. The plaintiffs signed the mineral deed under a mistake of fact.

■ Rescission of a contract, whether the object of a suit in equity or an action at law, is governed by equitable principles. Bostwick v. Mutual Life Ins. Co., 116 Wis. 392, 89 N.W. 538, 92 N.W. 246, 67 L.R.A. 705; 17 C.J.S., Contracts, § 413, p. 899.

■ A unilateral mistake may entitle a party affected thereby to rescind the contract. 17 C.J.S., Contracts, § 418 d, p. 903.

■ Generally it may be said that equitable relief by way of rescission will be given from a unilateral mistake relating

to a material feature of a contract of such grave consequence that the contract would be unconscionable. In this particular case the trial court, after hearing all of the evidence, found that the plaintiffs never understood the defendant's agent and hence signed the mineral deed on the basis of mistake of fact that it was an oil and gas lease. That would have entitled the plaintiffs to a cancellation of the instrument if they had taken the necessary steps promptly upon discovery of the true facts. 17 C.J.S., Contracts, § 432 d, p. 916.

The oil and gas lease provides for an annual delay rental due twelve months after the date of the lease, or on July 22, 1950.

■ The record of the evidence in this case is lengthy. The plaintiffs attempted to show that they had been overreached by fraud. The defendant, by his witnesses, Braun and Porter, deny the fraud. We are satisfied from the examination of the evidence in this case that no fraud existed. It is, therefore, unnecessary to discuss the evidence with reference to the allegations of fraud. Even if we assume for the purpose of this opinion that the mineral deed was signed on the basis of mistake of fact, the question remains whether the attempt to rescind the mineral deed on the basis of mistake has been promptly pursued.

■ A rescission is the unmaking of a contract. Butler Mfg. Co. v. Elliott & Cox, 211 Iowa 1068, 233 N.W. 669. An attempted rescission of a contract assumes that it has ceased to exist. Bauer v. National Union Fire Ins. Co., 51 N.D. 1, 198 N.W. 546. Rescission does not merely terminate a contract, it abrogates and undoes the contract from the beginning. Funk v. Baird, 72 N.D. 298, 306, 6 N.W.2d 569, 573. Generally speaking, rescission abrogates the contract not partially but completely. Raasch v. Goulet, 57 N.D. 674, 223 N.W. 808. Insofar as it is possible the plaintiffs are seeking the unmaking of the contract by procuring a re-

conveyance of the minerals that have not passed into the hands of innocent persons. In order to be entitled to a reconveyance they have assumed, and must assume, on the basis alleged, that the contract had ceased to exist.

■ The plaintiffs are only entitled to a reconveyance if they are entitled to rescind or cancel the mineral deed.

"A contract may be extinguished in like manner with any other obligation and also by rescission, alteration or cancelation to the extent and in the manner provided by this title." Section 9-0901, NDRC 1943.

"Rescission; When Permitted. A party to a contract may rescind the same in the following cases only:

"1. If the consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, menace, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds or of any other party to the contract jointly interested with such party; * * *". Section 9-0902, NDRC 1943.

"Rules Governing Rescission. Rescission, * * * can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

"1. He must rescind promptly upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability and is aware of his right to rescind; and

"2. He must restore to the other party everything of value which he has received from him under the contract or must offer to restore the same upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so." Section 9-0904, NDRC 1943.

The plaintiff, Phillip Fedorenko, testified that he discovered that he and his wife had signed a mineral deed about a year and three months after July 22, 1949. This was some time after the delay rentals became due under the oil, gas and mineral lease, on July 22, 1950. It is at this point that he discovered that he signed an instrument which he and his wife allege was procured by fraud. Thereupon he went to the bank, presumably the bank designated in the oil and gas lease, the First National Bank of Minot, North Dakota. He had received a statement of the amount of money due him as delay rental, and "figured that there was something wrong." He took his papers to the bank and his banker looked them over and advised this plaintiff, "You better go see a lawyer about it." The plaintiff did not consult a lawyer for some considerable time after he had seen his banker. Sometime during the winter of 1950–51 he talked to Mr. Bosard, a Minot attorney. The plaintiff at that time was making his home in Minot, North Dakota. Mr. Bosard advised him to go and see his State's Attorney who at that time was Mr. Robert Vogel of Garrison, North Dakota, and who later brought the action on behalf of the plaintiffs. Mr. Fedorenko employed Mr. Vogel either the latter part of May, 1951, or the first part of June, 1951. The first intimation that the defendant had that Phillip Fedorenko and his wife were not satisfied is contained in a letter dated June 30, 1951, written by the plaintiff's attorney, Robert Vogel, to the defendant, in which a request is made for cancellation or reconveyance of the mineral deed in question, with the further statement that if this is not done it will be necessary to take action to obtain a reconveyance or damages or both. There is no offer therein contained to restore the consideration paid for the mineral deed, which the testimony indicates was $50 for each 160 acres, or, in this particular case, $75. The oil, gas and mineral lease recited a consideration of $24. The plaintiffs received a check for $99 dated the same day as the lease.

The action of the plaintiffs was commenced on the 30th day of October, 1952, or a year and four months after the letter addressed to the defendant. The action is based upon the right of rescission and predicated on fraud practiced upon the plaintiffs.

The action of the plaintiffs recognizes that a one-sixteenth interest of the minerals conveyed by the deed of the plaintiffs to the defendant has been transferred by him to a third party and seeks only a reconveyance of the remaining seven-sixteenths interest left in him. They apparently recognize the rule announced in the case of Dixon v. Kaufman, N.D., 58 N.W. 2d 797, that a deed obtained by fraud is sometimes void, but more often is merely voidable. Hoffer v. Crawford, N.D., 65 N.W.2d 625, 631.

It is noted that in the plaintiffs' action there is no offer to restore the consideration paid by the defendant to the plaintiffs. The judgment of the trial court, however, required that the plaintiffs repay or tender repayment of the consideration for the mineral deed.

The plaintiffs, after becoming aware of the fact that they had signed a mineral deed, accepted the delay rentals on the oil, gas and mineral lease for 1951, 1952 and 1953.

Between the discovery of the alleged mistake and the request for cancellation or reconveyance addressed to the defendant, mineral values had increased materially in McLean County, North Dakota. This is not disputed. It is a fact to be considered in determining whether there was a timely attempt to rescind the contract insofar as that could be done.

In the case of Bauer v. National Union Fire Ins. Co., 51 N.D. 1, 198 N.W. 546, 549, this court held that under Section 5936, Compiled Laws of 1913, now Section 9–0904, NDRC 1943, requiring rescission on account of fraud to be promptly made, is mandatory, and if rescission is not prompt-

ly made, legal justification or excuse for the delay must be shown. In that case it is said:

"The right to rescind is waived by unexcused delay, although no prejudice or injury be shown as a result thereof. Annis v. Burnham [15 N.D. 577] p. 583, (108 N.W. 549). We think that the respondent, having wholly failed to offer any evidence in justification or excuse of the delay of a year in rescinding the compromise settlement, has not acted with the promptness required by the statute. A delay of four or five months in rescinding, or offering to rescind, after discovering the fraud, has been held to be fatal by the courts of California, construing a statute identical with our own. Gamble v. Tripp [99 Cal. 223, 33 P. 851]; Marten v. Paul O. Burns Wine Co., 99 Cal. 355, 33 P. 1107. See, also, Jordy v. Dunlevie, 139 Ga. 325, 77 S.E. 162. See, also, Annis v. Burnham, supra. There is no dispute as to the facts as to whether rescission was promptly made. The general rule then is, as heretofore stated, that the question whether the rescinding party acted with due promptness is one of law for the court. Black, Rescission & Cancellation, § 547. We are constrained to hold that the attempted rescission by the respondent was not promptly made, and, no excuse having been offered for the delay, was therefore wholly ineffective."

The facts in the above case disclose that an adjustment was made with the plaintiff on September 14, 1917, and a draft issued October 18, 1917. Sometime in the spring of 1918 the plaintiff engaged counsel and was at least constructively on notice of the alleged fraud. He claims, however, that he was not aware of the fraud until the defendant answered in August of 1918, which was about eight months before the attempted rescission took place.

██ In the case of Kramer v. K. O. Lee & Son Co., 61 N.D. 28, 237 N.W. 166, 171, this court again indicated that promptness was essential in an attempt to rescind a contract and that the plaintiffs in that case had not rescinded promptly as required by the statute. The contract involved in that case was dated March 16, 1927, and the facts show that no attempt at rescission was made until February of 1928, which the court says was "months after they (the plaintiffs) discovered the breach of warranty claimed and after the time they say they abandoned the use of the tractor." The diligence or promptness required to rescind upon discovering the facts, under our statutes, is the same whether the party attempting to rescind relies upon the ground of mistake, duress, menace, fraud or undue influence.

Where a party desires to rescind a contract upon the ground of mistake, he must, upon discovery of the facts, at once announce his purpose and adhere to it. 9 Am.Jur., Cancellation of Instruments, Sec. 45, page 389.

The plaintiffs offer as excuses for the delay, the fact that they were living in Minot during the winter of 1950–51; that the winter was bad and the roads were blocked; that their attorney was located at Garrison; and that they had unsuccessfully attempted to contact Mr. Braun at Turtle Lake.

██ We take judicial notice of the fact that there are railroad, telegraph, telephone and other facilities for business between Minot, Garrison and Turtle Lake. Section 31–1002, subsection 33, NDRC 1943. We also take judicial note of the fact that there are good highways between Minot, Garrison and Turtle Lake and that the distances are not too great. Section 31–1002, subsection 49, NDRC 1943; and that there is general certainty that matter carried through the mail will reach its proper destination. Section 31–1002, subsection 50, NDRC 1943. The excuses for the delay offered by the plaintiffs are insufficient. From the discovery of the mistake to the date of the bringing of the action by these plaintiffs covers a period of over two years. There was a delay of a year and four

months after the plaintiffs were fully aware of their rights to rescind the mineral deed. In the meantime the plaintiffs did accept the delay rentals for the oil, gas and mineral lease, that part of the transaction which they do not challenge. The oil, gas and mineral lease and the mineral deeds were signed at the same time. One consideration was given therefor.

■ Delay in commencing suit may be excused where there is some good reason, excuse or explanation for it. But something more is required than continued assertion of a claim unaccompanied by any act to give effect to it. 12 C.J.S., Cancellation of Instruments, § 51 b, p. 1025.

In the case of Daniel v. Hamilton, N.D., 61 N.W.2d 281, an action for the purpose of cancelling certain oil, gas and mineral leases executed by the plaintiffs, this court held that the plaintiffs had waived their right of rescission and cited authorities to support that conclusion.

■ Presumably Phillip Fedorenko discovered the mistake when he examined and looked at the copies of the instruments that had been left with him by the agent of the defendant and found that he and his wife had signed a mineral deed. That at least was sufficient to require him to make an inquiry. He did make an inquiry of his banker. He was advised to consult a lawyer. He did consult a lawyer in Minot who directed him to his State's Attorney. He did not attempt to see his State's Attorney for approximately nine months thereafter. If he did not have complete knowledge of his rights up to that time, he certainly had complete knowledge of his rights when he consulted his attorney sometime in May or June of 1951. No attempt was made to rescind the contract by any formal action until at least one year and four months thereafter. While no fixed rule can be laid down as to the time within which a person may rescind a contract, as what may be prompt rescission in one case, would not always be so under the facts of another. But under the facts and circumstances of this case, we think that the plaintiffs did not act promptly upon discovering the facts which entitled them to rescind and that they waived their right of rescission.

The judgment of the trial court is reversed and the plaintiffs' action dismissed.

BURKE, C. J., and GRIMSON, MORRIS, and SATHRE, JJ., concur.