[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13036
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-00152-LJA


CHRIS PAYNE,
individually and on behalf of the members of
Doco Federal Credit Union,

                                        Plaintiff - Appellant,


versus


DOCO CREDIT UNION,
and its Officers, Directors, Executives, Attorneys,
Successors and Assigns,
BARRY O. HEAPE,
individually and in his capacity as
President / CEO of DOCO Federal Credit Union,
TOM POLLOCK,
in his capacity as Board Chairman of DOCO Credit Union,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(May 8, 2018)

Before MARCUS, ROSENBAUM and BLACK, Circuit Judges.

PER CURIAM:

Chris Payne sued DOCO Federal Credit Union, his former employer, alleging he was fired in retaliation for raising concerns about the unlawful conduct of DOCO's President and CEO, Barry Heape. Christopher Farr, another DOCO employee, had revealed Heape's misconduct to Payne. But when the time came for his deposition, Farr fully supported Heape's version of events. In light of Farr's testimony, Payne agreed to settle the case.

Over two years after the settlement, Farr contacted Payne and admitted he had testified falsely. Payne then sued DOCO, Heape, and DOCO's Board Chairman Tom Pollock (collectively, Defendants), seeking rescission. The suit was dismissed without prejudice citing Payne's failure to restore the funds he had received in the settlement. Payne returned the funds and sued again. The district court granted judgment on the pleadings for Defendants, holding Payne's claim for

2

rescission was not prompt as a matter of law. Payne appeals that order and the subsequent denial of leave to amend his complaint. After review, we affirm.[1]

## I.  BACKGROUND

Chris Payne began working for DOCO Federal Credit Union on January 3, 2006. In October of 2008, a DOCO-owned ATM machine was vandalized. Christopher Farr, another DOCO employee, confided in Payne that Barry Heape, DOCO's President and CEO, had instructed Farr to further damage the vandalized machine in hopes the insurance company would declare it a total loss. Payne told members of DOCO's Board of Directors, including Tom Pollock, about Heape's unlawful conduct.[2] Days later, Payne was fired.

On December 19, 2009, Payne sued alleging he was terminated in retaliation for reporting Heape. Although Payne had anticipated Farr's testimony would "form[] the majority of the factual basis for [the] claims," Farr's deposition did not corroborate Payne's account. Instead, Farr testified in full support of Heape. Payne "felt compelled to compromise and settle" in light of Farr's testimony. On

---

[1] "We review *de novo* an order granting judgment on the pleadings." *Perez v. Wells Fargo, N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (citation omitted). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Id.* (quotations omitted) Although we typically review the denial of a motion to amend a complaint for an abuse of discretion, "when the district court denies the plaintiff leave to amend due to futility, we review the denial *de novo* because [the district court] is concluding that as a matter of law an amended complaint 'would necessarily fail.'" *Freeman v. First Union Nat'l*, 329 F.3d 1231, 1234 (11th Cir. 2003) (citation omitted).

[2] At the time of these events, Pollock was a member of DOCO's Board of Directors. Pollock is now Board Chairman.

3

November 19, 2010, the parties executed a Settlement Agreement and Release. Payne voluntarily dismissed his suit in compliance with the parties' agreement.

In August or September of 2013, Payne received a series of calls and e-mails in which Farr acknowledged his deposition testimony had been false. Farr also informed Payne that Heape had perjured himself and destroyed key evidence. Heape had allegedly threatened to fire Farr unless his deposition testimony supported Heape's version of events. "Shocked and astonished to learn of these revelations," Payne "immediately felt as though he had been tricked . . . into settling" for less than the true value of his case.

Farr was not, however, consistently forthright about Heape's misconduct. On September 24, 2013, while voluntarily giving Payne a sworn statement, Farr invoked his Fifth Amendment right against self-incrimination "and refused to answer the majority of the questions asked him . . . ." Farr again invoked his Fifth Amendment right on March 3, 2014 while testifying in a separate case related to these events. Finally, on June 27, 2014, Farr was granted immunity by the State of Georgia so that he could testify without fear of criminal prosecution.

On April 2, 2014, about three months before Farr received immunity, Payne filed a petition in Dougherty County Superior Court seeking to have the settlement agreement set aside. Defendants removed the case to the United States District Court for the Middle District of Georgia. After removal, Defendants moved to

4

dismiss, contending Payne could not pursue rescission until he had returned the funds paid to him under the settlement agreement. The district court agreed and dismissed the case without prejudice on May 15, 2015.

On July 16, 2015, Payne returned the funds. Two months later, on September 15, 2015, Plaintiff filed the instant case seeking rescission of the settlement agreement and advancing several other claims. Defendants filed a Partial Motion for Judgment on the Pleadings. The district court granted the motion, concluding as a matter of law that Payne's restoration of the funds was untimely. This order effectively ended the case because the parties' agreement contained a general release and covenant not to sue that precluded Payne from proceeding with his remaining claims. Payne moved for leave to amend his complaint, but the district court denied Payne's motion, concluding amendment would be futile. Payne appealed.

## II. ANALYSIS

### A. *Order Granting Judgment on the Pleadings for Defendants*

Payne seeks rescission of a settlement agreement. "[I]n order to rescind, the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value." O.C.G.A § 13-4-60. Synonyms for promptly include "at once, quickly, readily, seasonably, timely, [and] expeditiously." *Jody v. Dunlevie*, 77

5

S.E. 162, 164-65 (Ga. 1913) (citation omitted).  The promptness inquiry is not mechanical.  "What might be termed as prompt action in one case might in another instance be regarded as inexcusable laches."  *Id.* at 165.  The central question is whether the facts reveal a reasonable excuse for delay. *See id.* ("If he waits unreasonably long before making a tender, he forfeits his right to rescission. . . . [We must determine] if there is any excuse for this long delay in tendering back the consideration of the contract of settlement.").

Before reaching the merits, however, we must address Payne's threshold argument that the district court erred by deciding whether restoration was prompt before summary judgment.  Although promptness is "ordinarily a question for the jury," *Mitchell v. Backus Cadillac-Pontiac, Inc.*, 618 S.E.2d 87, 97 (Ga. Ct. App. 2005) (citation omitted), courts have, in limited circumstances, determined restoration was not prompt as a matter of law, *see, e.g.*, *Walker v. Johnson*, 630 S.E.2d 70, 75 (Ga. Ct. App. 2006), *Orion Capital Partners, L.P. v. Westinghouse Elec. Corp.*, 478 S.E.2d 382, 385-86 (Ga. Ct. App. 1996).  Payne contends these cases, which were decided at the summary judgment stage, provide no support for deciding the matter at the pleading stage.  Unlike a motion for summary judgment, "[a] motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is subject to the same standard as a Rule 12(b)(6) motion to dismiss." *United States v. Wood*, 925 F.2d 1580, 1581 (11th Cir. 1991).

6

Payne's argument is unavailing.  In *Jordy*, the Supreme Court of Georgia disposed of a case by demurrer, holding as a matter of law that an offer to restore made sixteen months after discovery of the fraud was not prompt. 77 S.E. at 164-65.  Yesterday's general demurrers are akin to today's motions to dismiss.  *See Kimbrough v. State*, 799 S.E.2d 229, 233 n.12 (Ga. 2017) ("Although the [Georgia] Civil Practice Act abolished civil demurrers, it retained their essential functions in [] motions upon the pleadings. . . . A motion to dismiss for failure to state a claim under O.C.G.A § 9-11-12(b)(6) performs substantially the same function as a general demurrer."). *Jordy*'s procedural posture illustrates that the district court did not err by deciding rescission was not prompt before summary judgment.

Alternatively, Payne asserts the case ought to have proceeded to summary judgment to allow further development of the factual record.  It is, however, unclear what further development is needed.  Payne put forward the date on which he discovered the fraud, the date on which he restored the proceeds, and an explanation for the intervening period.  No portion of Payne's argument indicates what additional facts are lacking.  Insofar as Payne is referring to the facts asserted in his proposed amended complaint, any error was vitiated by the district court's consideration thereof, which is addressed in the next section of this opinion.[3]

---

[3] Payne also contends that "[i]n deciding against [him], the trial court drew inferences against the non-moving party, which is inappropriate when considering a 12(c) motion for judgment on the pleadings."  But because Payne does not identify any such inferences or

7

We turn, now, to the heart of the district court's analysis.  The district court analyzed Payne's delay as if it had been nine months.  It reached this figure by adding the seven months that elapsed between Payne's discovery of the fraud (which it assumed occurred early in September of 2013) and the filing of the first rescission action on April 2, 2014, to the two months that elapsed between the issuance of the order requiring Payne to return the funds on May 15, 2015 and the actual restoration of the funds on July 16, 2015.  Payne contended the delay was not unreasonable because the time was spent diligently working to obtain a sworn statement from Farr, a critical witness.  The district court rejected Payne's excuse as insufficient and, in the absence of cause for delay, held restoration was not prompt.

Payne urges us not to consider the two months that elapsed between the issuance of the order requiring him to return the funds and the date on which he actually restored them.  This period purportedly reflects time spent corresponding with Defendants about how and where to return the funds as well as the week the funds spent in the mail.  We need not assess the merits of Payne's position.  Instead, we assume, *arguendo*, that Payne delayed six months and ten days. This calculation excludes the two month period Payne objects to and gives Payne all

otherwise develop his argument, it is waived. *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (stating that passing references are insufficient to raise issues for appeal and such issues are deemed abandoned).

8

possible benefit by looking to the period between the filing of the first rescission action on April 2, 2014 and September 23, 2013 (the day before Farr gave Payne his sworn statement and, by logical implication, the last day on which Farr could have made his informal revelations to Payne).

As noted above, "the defrauded party must promptly, *upon discovery of the fraud*, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value." O.C.G.A § 13-4-60. Georgia courts have found a delay of six months to be unreasonable. *See Walker*, 630 S.E.2d at 75. Here, Payne's delay was longer. Although promptness is not a rule suited to mechanical application, examination of the record does not reveal a "reasonable excuse . . . for the delay in making the offer to restore the status." *Jordy*, 77 S.E. at 165.[4]

## B. Order Denying Leave to Amend

Payne also contends the district court erred by concluding that amending his complaint would be futile. In support, Payne cites new allegations that his

---

[4] Payne proposes a different analysis. He asserts a delay in restoring consideration is only unreasonable if the defrauded party acted inconsistently with an intent to rescind or if the other party was prejudiced by the delay; however, none of the three cases Payne cites support such a requirement. *See generally Walker*, 630 S.E.2d at 75; *Orion Capital Partners*, 478 S.E.2d at 385-86; *Jordy*, 77 S.E. 162 at 164-65.

attorneys offered to return the funds on March 3, 2014.[5]  Assuming Payne

discovered the fraud on September 23, 2013, five months and eight days elapsed

before Payne's attorney offered to restore the funds.  This calculus nudges the

length of Payne's delay twenty-two days below six months, a period Georgia

courts have concluded was not prompt as a matter of law.  But a twenty-two day

change does not warrant a different result.  Although Payne's proposed

amendments also flesh out the specific steps he took to secure immunity for Farr,

the fact remains that procuring admissible evidence of fraud is not a reasonable

excuse for delay, regardless of the effort expended.

Alternatively, Payne asserts Defendants waived the tender requirement.  The

tender of benefits can be waived if "the party entitled to payment, by declaration or

conduct . . . proclaims that, if tender of the amount due is made, an acceptance of it

will be refused." *S.R. Co. v. Lawson*, 353 S.E.2d 491, 494 (Ga. 1987).  This

argument was not raised before the district court, accordingly, we need not

consider it.  *Stewart v. Dep't of Health and Human Servs.*, 26 F.3d 115, 115 (11th

Cir. 1994) ("As a general principle, this court will not address an argument that has

not been raised in the district court.").  Even had the argument been properly

presented, the facts in the proposed amended complaint do not show Defendants

---

[5] The parties disagree about whether Payne's attorney's statements constitute an offer to restore.  We need not decide the issue.  Assuming the March 2014 statements did constitute an offer to restore, the district court still did not err by determining the offer was not prompt.

10

waived the tender requirement.  We agree with the district court's conclusion that

amendment would have been futile.  The judgment of the district court is

**AFFIRMED.**