[File No. 5900.]

W. F. KRAMER and Roy Kramer, Respondents, v. K. O. LEE &
SON COMPANY, Appellant.

(237 N. W. 166.)

Opinion filed April 20, 1931. Rehearing denied June 13, 1931.

*Sullivan, Hanley & Sullivan,* for appellants.

*Jacobsen & Murray,* for respondent.

BURR, J. The defendant is a South Dakota corporation, of which K. O. Lee was president. The plaintiff, father and son, after some written and oral negotiations, signed a written order to the defendant for the sale to them of "one 18–36 Rebuilt Gray Tractor complete to be shipped from Aberdeen, S. Dak., or Selfridge, N. Dak." subject

to approval by the defendant. The company approved the order. The tractor was delivered, $300 was paid in cash and notes and chattel mortgages executed for $550, the remainder of the purchase price. For reasons hereafter stated plaintiffs attempted to rescind the contract, demanded the return of the cash and promissory notes, and on the return being refused began this action to recover the same.

The complaint alleges a sale under certain warranties as to mechanical condition, order, amount of work done in rebuilding, and power, and under agreements as to the replacements of parts, and return of purchase price in case of dissatisfaction; the breach of these warranties and agreements; that these were made for the purpose of deceiving the plaintiffs and did deceive them; that plaintiffs made payments as stated; that plaintiffs notified the defendant of defects and wherein the warranties and agreements were breached, and asked for the return of the money and notes given for the purchase price; that defendant made some attempts to remedy defects and failed; that plaintiffs served notice of rescission, but defendant refused to return the notes and cash; that they lost time and service worth $500 and a crop that could have been produced worth $1,000. So they ask for judgment for $2,500.

The answer alleges that the tractor was purchased upon a written order, as follows:

"Order for Second-Hand Machinery

Dated at New England, N. Dak.

Mar. 16, 1927,

To the K. O. Lee & Son Co., Inc., Aberdeen, S. D.

Please reserve and ship or deliver to me at Aberdeen, S. D. in care of Chicago Milwaukee & St. P. Ry. on or about April 1st, 1927, or as soon thereafter as the same is ready for delivery or shipment, and you are able to secure transportation, the following Second-hand machinery: One 18-36 Rebuilt Gray Tractor complete to be shipped from Aberdeen, S. D. or Selfridge, No. Dak.

In consideration whereof the undersigned agrees to accept the same, or in case of shipment, to receive the same on its arrival, subject to the conditions named below, pay the freight and charges thereon from Aberdeen, S. D. and further agree to pay to your order at the time and

place of delivery, the sum of Eight Hundred Fifty Dollars, and bargain in trade and deliver to your warehouse (or load F.O.B. cars . . . ) the following . . . as follows:

Cash with order $300.00. My note due Oct. 1st, 1928, $250.00. Cash on delivery $————. My note due ————. My note due Oct. 1st, 1927, $300.00. My note due ————.

If all notes are fully paid in cash on or before ———— 19— a discount of $———— will be allowed.

Notes to bear interest from date at 9 per cent to be given on your blanks, payable at First National Bank, New England, N. D.

The title to the above described machinery shall remain in The K. O. Lee & Son Co. until complete settlement is made, as provided for herein, and until cash is paid in full or notes and mortgages are executed and delivered and mortgages are placed on record. Said notes are to be accompanied by approved security, and a first mortgage on the above described machinery, and on the following other property, to-wit: . . . Three fourths of crops, SE¼–Sec. 1, T. 134, R. 97.

I Further Acknowledge and Agree:

First: That the K. O. Lee & Son Co. is a corporation under the laws of the State of South Dakota, with offices at Aberdeen, Brown County, South Dakota.

Second: That this order is taken and given subject to approval and acceptance or rejection, by the corporation, notice of which acceptance or rejection is hereby waived.

Third: That the above described machine or machinery is purchased as Second-hand, has been thoroughly inspected, and accepted, and is not warranted either as to condition, power, rating, operation, capacity, design, size, quality, fitness, suitability, construction or durability, or in any manner whatsoever; that the size or rating of machinery herein ordered, is merely presumed and not known, for the purpose of identification and no verbal promise or agreement shall be valid as against or in addition to any of the conditions herein specified.

Fourth: That as a condition precedent to the agreements herein contained and of the acceptance of this order and delivery of the machinery, that in no event shall the Corporation be subject to any other or further liability (except such as herein expressly given and

only on the conditions stated) whether in tort, contract or otherwise arising or growing out or in connection with said machinery; or the operation thereof; or the procuring of the order; or for any act, omission or fault of any person on behalf of the Corporation, either in starting, setting up, adjusting, operating or attempting to remedy any defect in the machinery or otherwise; and that no attempt by the Corporation or any person on its behalf to remedy any defect in the machinery shall be deemed a waiver of any of the provisions, terms and conditions herein contained.

Fifth: That the Corporation assumes no liabilities for nonshipment or transportation and acceptance by me is a full waiver of any claim for delays in filling this order, arising from any cause. In consideration of the expense incurred by said Corporation in soliciting, investigating, and taking this order and preparing the goods for delivery or shipment, I promise and agree to pay all freight or delivery charges on same from the point of delivery or shipment and for its return thereto, and 10 per cent of the price above stipulated, in cash, as liquidated damages, in case I should cancel this order or decline to accept the said machinery.

Sixth: That any one or more of the signers hereof may with the consent of said corporation add to or change the terms of this order without in any manner releasing the other signers from liability under it.

Seventh: That in case a suit is brought to enforce this order against me, I hereby agree to pay all attorney's fees. I further agree that in case of a suit, that the action shall be brought in Brown County, State of South Dakota.

P. P. New England N. D.                    Signed, Roy Kramer,
Witness K. O. Lee ,                        W. F. Kramer."

and accepted by the plaintiffs in conformity therewith; that said order contained all of the agreements between the parties covering the sale and purchase of said machinery; that the contract was a South Dakota contract, and under the laws of the state of South Dakota there is no statute "similar to or with like effect as Chapter 238 of the Laws of 1919 of the State of North Dakota;" that the tractor "was delivered

by the defendant to the plaintiffs under and pursuant to said Order" on or about March 16, 1927; that the plaintiffs used it in connection with their farming operations of 1927, and did not, within a reasonable time after delivery, "give notice to the defendant that said machinery. was not reasonably fit for the purpose for which it was purchased," and that they desired to rescind and "that no attempt at any rescission was made by said plaintiffs until the 24th day of February, 1928, nearly a year after the delivery to them of said machinery;" that if the tractor was damaged or defective it is so because of the carelessness and negligence of the plaintiffs in operating.

For a counterclaim defendant alleges that the notes given are due and unpaid; that a chattel mortgage was given upon the tractor to secure the payment of these notes and a chattel mortgage given upon an undivided three-fourths interest in certain crops, describing them, so the defendant asks for judgment on its counterclaim for the amount of the notes and interest.

The plaintiffs reply admitting they signed the notes and mortgages, but claim that their "signatures to the written order or contract set up in the defendant's answer, were procured by fraud and deceit," setting forth particulars, and ask the relief demanded in the complaint.

The theory of the complaint is the tractor was warranted; that there was a breach of such warranty, with timely rescission; and therefore plaintiffs are entitled to the return of their money and the notes and the mortgages given. Defendant denies the warranties and timely rescission; relies upon the written order and asks for the payment of the remainder of the purchase price. The reply follows the theory of the complaint and attempts to avoid liability under the written order by showing that by fraud and deceit they were induced to sign the order without reading and thus were prevented from knowing the alleged warranties were not set forth therein.

In addition to the general verdict the court submitted six interrogatories to the jury; Did the plaintiffs make known to the defendant the purpose for which they were purchasing the tractor; was the tractor fit for the purpose for which it was purchased; did the plaintiffs, within a reasonable time after the delivery of the tractor to them, give the defendant notice that said tractor was not fit for the purpose

for which it was purchased; did the plaintiffs, within a reasonable time in connection with the rescission, place the tractor at the disposal of the defendant; was the defendant guilty of fraud in obtaining the signatures of plaintiffs to the contract; was the contract a North Dakota contract. The jury answered all of the interrogatories in the affirmative except the second, returned a verdict in favor of the plaintiffs for $1,053.80, and judgment was rendered thereon.

Defendant moved for judgment notwithstanding the verdict or for a new trial, which motion was denied and the defendants appeal.

There are seven specifications of error dealing with rulings on defendant's motion for a directed verdict, judgment notwithstanding the verdict or for a new trial; eleven dealing with alleged errors in the instruction; and one, with nine sub-divisions, alleging the evidence is insufficient to justify the verdict.

"The execution of a contract in writing . . . supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument" (§ 5889 of the Code), hence parol evidence is inadmissible to vary the terms of the written contract. See Gilbert Mfg. Co. v. Bryan, 39 N. D. 13, 166 N. W. 805; State Bank v. Burke, 53 N. D. 777, 208 N. W. 115. And even if the prior negotiations are inconsistent with the terms of the written contract, the latter controls. John A. Tollman Co. v. Bowerman, 5 S. D. 197, 58 N. W. 568; John A. Tolman Co. v. Rice, 164 Ill. 255, 44 N. E. 496. Failure to read the contract is no excuse, nor will proof that the other party knew the contract did not contain all agreements and failed to call attention to this fact, in itself avoid it. See Knight & Boatwick v. Moore, — Wis. —, 234 N. W. 902.

It is conceded the parties attempted to reduce their negotiations to writing; but the order set up in the answer is the only writing in the case. It contains none of the alleged warranties, so parol evidence is inadmissible to establish such warranties or to extend any warranty contained therein. Hooven & A. Co. v. Wirtz, 15 N. D. 477, 107 N. W. 1078; Dowagiac Mfg. Co. v. Mahon, 13 N. D. 516, 101 N. W. 903; Minneapolis Threshing Mach. Co. v. Hocking, 54 N. D. 559, 209 N. W. 996. See Blecher v. Schmidt, — Iowa, —, 235 N. W. 34. Thus plaintiffs could not sue on the order and then ask to add the

warranties to it. See also Wheaton Roller-Mill Co. v. John T. Noye Mfg. Co. 66 Minn. 156, 68 N. W. 854.

But the plaintiffs do not allege nor rely upon any written contract. They state that by fraudulent representations they were induced to purchase the tractor and that they rescinded the contract when they discovered the fraudulent representations. If proved this would entitle them to recovery. It develops there was a written order but plaintiffs do not seek to add to it the representations, warranties and agreements which they say it should have contained. They repudiate it. Neither is it the case of an attempt to prove a separate oral contract regarding the matter which does not in any way vary the terms of the written contract such as is sometimes permitted, as for example where horses were sold and bill of sale given and at the same time an oral representation as to their soundness was made. In such case it was held that the representations did not in any way contradict or vary or even attempt to extend the bill of sale but was a separate and distinct agreement. Hersom v. Henderson, 21 N. H. 224, 53 Am. Dec. 185. Plaintiffs' cause of action rests upon fraudulent representations inducing them to enter into a contract, together with timely rescission.

Plaintiffs say that under all circumstances they are entitled to time for trial as under the provisions of § 5991a of the Supp. "Any person . . . purchasing any gas . . . tractor . . . for their own use shall have a reasonable time after delivery for the inspection and testing of the same, and if it does not prove to be reasonably fit for the purpose for which it was purchased the purchaser may rescind the sale by giving notice within a reasonable time after delivery to the parties from whom any such machinery was purchased . . . and placing same at the disposal of the seller."

The defendant says this contract is a South Dakota contract, that there is no law in South Dakota similar to this statute and therefore the plaintiffs are not entitled to the benefit of the provisions of § 5991a of the Supp. The view most favorable to the plaintiffs is that the contract is a North Dakota contract and therefore under the provisions of § 5991a of the Supp. The plaintiffs would be entitled to such "reasonable time after delivery" before being compelled to rescind. As we hold the plaintiffs did not rescind in time, even granting them

such "reasonable time after delivery" it cannot avail them to hold such contract to be a North Dakota contract. We are therefore not required to determine this matter. The best they could claim is such reasonable time to ascertain whether it was "reasonably fit for the purpose for which it was purchased." There is no question but what the defendant knew the purpose for which it was purchased, even though there is no allegation in the complaint that the tractor was bought for a specific purpose, no statement of the specific purpose for which it was bought, and no allegations that such purpose, if any, was made known to the defendant.

A party to a contract may rescind the same if his consent is obtained by fraud, or if consideration fails because of the fault of the other party; but he must rescind promptly upon discovery of facts which entitled him to rescind. Comp. Laws, §§ 5934–5936.

Roy Kramer testifies that they got the tractor the early part of April, 1927; that they immediately took it to the farm and "we tried to sow with it . . . . we started out one afternoon and the next morning we burned out a connecting rod on it. We were pulling two drills with it. Then we had to lay up to get repairs and get a new bearing made. We started out again the gear broke on us and it was simply worn out. Compression was weak . . . and it would not pull, and did not seem to have any power at all . . . I tried to plow and we borrowed a four bottom plow and hooked it up . . . she could not pull unless we ran the plows real shallow . . . we had to quit plowing. I found that the magneto was weak. I sent that back to get it fixed. We got a new gear and put it on but by the time we got started again the radiator was all rusted out. . . . It was then really too late to do any more work with it, and so we used the other tractor and quit using that one we got. We could not really plow with it like we ought to plow with it, so we simply could not plow with it." He says that they wrote to the company but they sent no man to fix it; that they paid for a new gear and a new radiator but "it did not seem to work any better than before." "We just used it to seed that grain with and it broke down and when we got the magneto back it broke down so we could not use it any more." Roy does not claim that Mr. Lee came out to see them until the fall—the

time for collection. At that time he claims there was a talk whereby Lee agreed to put on all of the repairs necessary and fix up the tractor. Evidently Roy Kramer had written to the company for the plaintiffs introduced in evidence a letter from the company dated May 19, 1927, wherein it is stated by the writer "I have your favor in regard to the magneto" and also speaks about the connecting rod bearing put in by the plaintiffs as well as the new gear. Plaintiff also introduced a letter from the company to Roy Kramer dated June 7, 1927, stating "We are very much surprised to receive your letter dated June 4th stating that you need a new radiator," and then telling him to send the radiator to Aberdeen and they would get a new one free of charge, also protesting against them going to other sources to buy repairs. "You bought the tractor from us and if anything is worn or defective you should come to us for replacement, instead of buying elsewhere." Plaintiff introduced another letter from the company to Roy Kramer, dated June 11, 1927, wherein the company said: "We have your letter of the 9th. We don't like the tone of your letter nor the attitude you have adopted," and then goes on to state that an Aberdeen company had agreed to furnish a new radiator "with the understanding that it be shipped C.O.D. $60," and to return the old radiator and if it is leaky or defective they would get full credit for it. They testify to repeated attempts on their part to make the tractor satisfactory, but there is no testimony showing they were prevented from rescinding by any promises or inducements made by defendant as none are shown to be made until October. They say that when the defective parts were sent in they were to get repairs; but they admit they did not send in any defective parts to the defendant company.

It is claimed the court committed error in admitting Exhibt "2," a letter written to plaintiffs by K. O. Lee on June 4, 1928, more than three months after the notice of rescission. This letter contained statements by Mr. Lee to the effect that he would help them to get the tractor into good working condition and told the instructions he had given to one Dahlhaug to assist them in making repairs. The objection was made that the letter was written after the rescission, that it was merely an offer to help them and to send a man to help them and was incompetent, irrelevant and immaterial. Counsel for the plaintiffs

urged that it was admissible for the purpose of showing the company was attempting to get the plaintiffs to keep the tractor. The letter was written months after the notice of rescission, and therefore had nothing to do with delay in rescinding. Its admission for that purpose was error.

October 5, 1927 Roy Kramer wrote Exhibit "B" as follows:

"As soon as K. O. Lee come up here and settle up for those repair that we put on and should be on that tractor he can get his money any time for it. I am not going to send it to him. He had lots of time when he sold the tractor here and if he has not time know to come up here to settle up he can take time.

"Eny time he settle up he can have his money but not before."

So far as the record shows the first offer to return the tractor was in the fall of 1927 when the president of the company was interviewing the plaintiffs. The only time shown was in October. The record is silent as to when the plaintiffs discovered the alleged warranties were not included in the order; but if they were acting under the impression that these warranties were part of the contract they knew in April that the warranties were broken. It is very clear therefore that, according to their own testimony, they knew in the spring of 1927 the tractor was not fit for the purpose for which it was bought; but no attempt at rescission was made until February, 1928. Roy Kramer says they seeded about 200 acres in the spring of 1927 and plowed 35 acres that spring. They used it in threshing for a few days. He says that in all this the tractor was no good and could not do the work; that Mr. Lee came out to the farm in November or December of 1927 and it was then "agreed to put on all of the repairs and fix it up during the winter so it would be running for the spring work. He was supposed to have them there by the first of March." But this was months after they discovered the breach of warranty claimed and after the time they say they abandoned the use of the tractor. No rescission had been made up to this time.

The plaintiffs had the right to prove that they bought the tractor under fraudulent representations such as gave them the right to rescind, and if they rescinded according to law they were entitled to the return of what they had given. The evidence shows conclusively however they

did not rescind as required by law. Therefore they are bound to pay for the tractor. For this reason plaintiff's case must fail.

Though plaintiffs failed to rescind within time they are not necessarily shut off from all remedy. It is only when they have claimed and been granted the remedy of rescission under the provisions of § 5991a that this method is exclusive. See Allis-Chalmers Mfg. Co. v. Frank, 57 N. D. 295, 221 N. W. 75; Fuller v. Fried, 57 N. D. 824, 224 N. W. 668. It is true the complaint is based upon rescission and asks for the return of the purchase price; but the counterclaim is in itself an action brought by the defendant against the plaintiffs and the reply must be treated as an answer. In the reply the plaintiffs reallege the allegations of the complaint and also set forth as a defense that their signatures were obtained by fraud and deceit and they ask for the relief demanded in the complaint—that is, the return of the purchase price paid together with the redelivery of the notes and mortgages. Having failed to show timely rescission plaintiffs are relegated to their right to damages as an offset to the suit on the notes and mortgages.

It becomes important to determine first whether the plaintiffs were fraudulently induced to sign the order, and if so the amount of their damages as an offset to the value of the tractor they purchased. There is no question but what the plaintiffs agreed to pay $850 for this tractor. The measure of damages submitted by the trial court was "the difference between the reasonable value of the tractor if it had been in the condition and would do the work it was represented to do, and its reasonable market value in its actual condition at the time it was received by the plaintiffs at their farm." The defendant was not to deliver the tractor at the farm; but at Aberdeen. However, no objection was taken by either side as to the measure of damages given by the court.

The question of its value was submitted to the jury; but it is claimed there is no competent testimony as to what it was worth if it were as warranted and what it was worth in the condition delivered. The only ones to testify thereto were the plaintiffs themselves.

The court over the objection of defendant, permitted the plaintiff Roy Kramer to testify as to what the tractor would have been worth to them at the time they received it on the farm, if it had been as

represented and could have done the work claimed. There was an objection that there was no basis for any measure of damages set forth in the pleading and that no proper foundation had been laid for the introduction of such testimony. This plaintiff had stated how long he had handled tractors and told something about his experience with tractors but there is nothing to indicate that he knew anything about values. The court permitted the plaintiff W. F. Kramer to tell how much experience he himself had and how much experience his son had in handling tractors, also how long the son had worked in the matter of overhauling tractors, and to answer this question: "If that tractor had been in the condition and would do the work that he said it would do what would it have been worth at the time you got it?" There was an objection to this on the ground that there was no proper foundation laid. Both rulings were erroneous. There was nothing to show any special knowledge of values on the part of these plaintiffs. Both testified the tractor woud have been worth the amount of the purchase price plus freight and that the machine was not worth anything. However Roy testified that "just as soon as he made arrangements to give us credit on the repairs, we would pay the balance of it, pay the notes," and that this is what he meant by the expression "any time he settled up he can have his money" contained in the letter Exhibit B. Nothing in this letter indicates the tractor had no value whatever. There is no question but what the tractor had some value, and the plaintiffs practically admit it.

The plaintiffs must concede liability therefore on the notes and mortgages, but are entitled to offset any damages they may have sustained.

There was evidence introduced raising the issue whether the signatures of the plaintiffs were obtained by fraud. The nine exceptions to portions of the charge deal with submission of this question of fraud to the jury, the law as given by the court dealing with this issue, and whether the contract was a North Dakota contract. If it was proper to submit the issue of fraud then the instructions given thereon were proper.

However as there must be a new trial on the matter of damages and as the question of the alleged fraudulent procuring of the signatures is

a crucial point the interest of justice requires the whole matter raised by the counterclaim be litigated,—the questions of whether the contract is a North Dakota contract, and timely rescission being eliminated in this proceeding.

The decision of the lower court is reversed and the case remanded for a new trial on the counterclaim and reply, with leave to either party to amend pleadings if necessary in order that the issues of fraudulent procuring of signatures and the amount of offset if any may be submitted properly.

CHRISTIANSON, Ch. J., and BIRDZELL, BURKE, and NUESSLE, JJ., concur.