**Odell KNOSHAUG and Merrill Knoshaug, Plaintiffs,**

v.

**Harold Arnold POLLMAN, Defendant.**

**Civ. No. 3142.**

United States District Court
D. North Dakota, Northwestern
Division.

Jan. 24, 1957.

See also 18 F.R.D. 386.

L. W. Fraase, of Ohnstad & Fraase, Tioga, N. D., and Joseph P. Stevens, Minot, N. D., for plaintiffs.

Clyde Duffy, Devils Lake, N. D., Arthur W. Stokes, Grand Forks, N. D., and Harold A. Pollman, Dallas, Tex., for defendant, Harold A. Pollman.

REGISTER, Chief Judge.

The above entitled action came before this Court on December 4, 1956, at Minot, North Dakota, for a determination of defendant's motion for summary judgment. In accordance with an order of this Court bearing the same date and granting defendant's motion for summary judgment, this opinion is now filed.

The complaint was filed in the District Court of the Fifth Judicial District, Mountrail County, North Dakota, on the 19th day of May, 1955. The plaintiffs therein ask the Court to declare null and void, and cancel of record, a mineral deed for eight mineral acres, dated October 5, 1953, executed and delivered by plaintiffs as grantors in favor of defendant as grantee. The plaintiffs allege fraud on the part of the defendant in the procurement of said deed.

Thereafter, on petition of the defendant, the cause was removed to this court on the ground of diversity of citizenship. In his answer, which was filed on July 13, 1955, the defendant denies all allegations of fraud and alleges the deed of October 5, 1953, was a valid conveyance, given in consideration, on a contingent basis, for legal services.

The essential facts which are properly before the Court for the purpose of this motion are as hereinafter stated.

In August, 1953, the plaintiffs sought the advice and help of defendant with re-

gards to the possibility of securing the drilling of an oil well on a forty-acre tract of land then owned by the plaintiffs but under lease to the Amerada Petroleum Company. The particular tract is more fully described as follows: SW¼ SW¼, Section 30, Township 158 N Range 94 West. Plaintiffs were desirous of obtaining an "off-set" well, apparently because their land was being drained by a neighboring well. The defendant, who was a practicing attorney and familiar with the oil development in the area, advised plaintiffs that, in his opinion, they were entitled to an "off-set" well, and he would attempt to secure the same for them. Several days later, after some investigation, defendant called plaintiffs to his office and advised them that he was reasonably sure he could obtain for them the desired well. A fee arrangement was discussed and agreed upon at this time, the fee being four mineral acres out of the forty-acre tract, contingent, however, upon defendant's success in obtaining an "off-set" well. A mineral deed for four mineral acres running from plaintiffs to defendant was thereupon prepared and duly executed and delivered that day, but was retained in defendant's possession and recordation thereof delayed pending the drilling of the well. Defendant thereupon commenced negotiations with Amerada Petroleum Corporation in an effort to secure the drilling of the desired well. These negotiations between defendant and Amerada continued until early October, 1953, the result being that Amerada would not drill on plaintiffs' forty-acre tract without first unitizing that tract with a neighboring forty-acre tract. Plaintiffs objected to this plan, but offered a counter-proposal and to the effect that they would agree to the unitization if Amerada would drill a second well on another tract of two hundred and forty acres, located at some distance from the other, in an area unlikely to quickly develop, and then owned by plaintiffs. This counter-proposal was apparently acceptable by Amerada, for on October 7, 1953, Amerada entered into a contract with plaintiffs whereby Amerada agreed to drill two oil wells, one on the forty-acre tract (which was unitized with an adjoining forty-acre tract) and one on the two hundred forty acre tract.

Prior to the execution of the contract between Amerada and the plaintiffs, and on October 5, 1953, defendant called plaintiffs to his office, and explained to them the position taken by Amerada. It was at this conference that the above mentioned counter-proposal was advanced. It was at this meeting, also, that the matter of a fee was again discussed. Following this discussion, a letter was prepared in defendant's office, directed to him and signed by both plaintiffs, which letter contained the following two paragraphs:

"This memorandum will witness our understanding that you may negotiate with Amerada on the basis of unitizing that forty-acre tract with the Northwest Quarter of the Southwest Quarter of Section Thirty in Township 158 North Range 94 West only upon receiving a commitment from Amerada to commence in a reasonably short time (about 60 days) the drilling of an additional well on our tract of land in Section 32, Township 158 North Range 94 West.

"Further, in view of the fact that your compensation will be in acreage over the unitized tract, our conveyance to you is to be ⁸⁄₄₀ths of the SW¼ SW¼ of Section 30, Township 158 North Range 94 West, (intending eight mineral acres).

This letter was, in effect, a contract of employment. Defendant had also, at the same meeting, prepared a deed conveying to himself eight mineral acres out of the forty-acre tract. This deed was dated October 5, 1953, and was signed by both plaintiffs, but recordation thereof was delayed until after Amerada commenced drilling operations. At this meeting, too, the unrecorded four-acre deed was cancelled and voided.

On October 7, 1953, plaintiffs again visited defendant's office and a discussion was had concerning the drilling program best suited to plaintiffs. Following this discussion plaintiffs and defendant went over to the offices of the Amerada Petroleum Corporation where they conferred with various officials and employees of Amerada, and it was there that the drilling contract heretofore referred to was executed between Amerada and plaintiffs. On this date, in defendant's office, and prior to going to Amerada's office, further discussion was had concerning defendant's fee. According to defendant, the new deed was "looked over", plaintiffs were assured that the eight-acre fee was limited to the forty-acre tract, and that defendant would be entitled to the said fee only if two wells were obtained (one on the forty-acre tract and the other on the 240-acre tract). According to plaintiffs, they had not read, on October 5th, the new eight-acre deed; thought that it was only another deed for four mineral acres; had not agreed to convey eight mineral acres to defendant; had not read the letter which they signed; and one of the purposes for which they went to defendant's office, on October 7th, was to inquire about said deed. They admit that on October 7th, upon inquiry, defendant told them it did convey eight mineral acres from the forty-acre tract and that after receiving such information they made no complaint or objection thereto, and proceeded with defendant to Amerada's office. Defendant further contends that after discussing the eight-acre deed, he took plaintiffs downstairs to a bank, and that plaintiffs signed and acknowledged the same before an official thereof (who was, and acted as, notary public); the deed bears the notarial certificate of such notary public. Plaintiffs deny acknowledging said instrument before any notary public, and deny going before said officer. They admit signing the same. The deposition of the notary involved corroborates defendant in that said notary testified that, notwithstanding the fact he was not acquainted with plaintiffs and does not remember the transaction, he has never, at any time, taken the acknowledgment of any person whom he did not see sign the notarized instrument.

Aside from the matters in dispute as aforesaid, the facts are uncontroverted.

Amerada Petroleum Corporation promptly fulfilled its obligations under the drilling contract, and by January 19, 1954, there was a producing oil well on each of the tracts owned by plaintiffs. Defendant had, on November 5, 1953, caused his eight mineral acre deed to be duly recorded.

Shortly after January 19, 1954 (the date on which the second well was "brought in") plaintiffs received a letter from Stanolind Oil Purchasing Company (purchaser of the crude), to which was attached a "division order", which set forth the interests of all parties in the forty-acre tract, and specifically setting forth eight mineral acres as being owned by the defendant. A part of said letter is as follows:

"The division order enclosed herewith reflects your interest in the property therein described. We request you sign this division order in evidence that your interest is correctly set forth. In the event of any discrepancy, please return promptly unsigned with an explanation."

The division order is directed to said Purchasing Company, and contains the following:

"The undersigned, and each of them, guarantee and warrant that they are the legal owners in the proportions set out below of all the oil produced from the * * *" land described.

Plaintiffs testified in their deposition that they received this letter, read it and understood its contents, and likewise read and understood the division order and that they signed and returned the same.

Plaintiffs admit in their deposition that they had seen defendant on occasions between October 7, 1953 and May,

1955 (the month in which this action was commenced), and had opportunities to converse with him, but never complained to the defendant or made any objection to him concerning this matter, and never took any action to question the validity of said deed, or to set it aside, prior to May, 1955.

Plaintiffs further admit that in January, 1954, they received a royalty check from Stanolind for oil produced from the first well in December, 1953, and that each month thereafter they have received, endorsed and cashed a royalty check for oil produced from each of the two wells, beginning with the month following commencement of production. At no time did plaintiffs make any complaint or objection to Amerada or said Purchasing Company concerning division of such royalties, which of course was based upon the division order hereinbefore referred to.

Concisely, then, the following facts exist: The mineral deed involved was executed and delivered on October 5, 1953; plaintiffs knew, at least by October 7, 1953, that it conveyed eight mineral acres to defendant; an oil division order was voluntarily signed by plaintiffs in January, 1954, which order was signed pursuant to a request contained in a letter from the Purchasing Company, and which letter and order were read and understood by plaintiffs, and which set forth ownership of eight mineral acres in defendant; oil royalty checks, based upon such proportionate ownership, were recieved monthly by plaintiffs, and were endorsed and cashed; opportunities presented themselves to plaintiffs to complain personally to defendant, but no complaint or objection concerning such deed was made to defendant, and at no time have plaintiffs voiced any objection to or dissatisfaction with said deed to defendant, Amerada, Stanolind, or anyone else, and have never taken action to question the validity of said deed, or to void or rescind the same, until the commencement of this action in May, 1955. Within approximately ninety days from employ-

ment of the defendant, two oil wells had been drilled on plaintiffs' tracts of land; each was a producer, and at all times since, plaintiffs have been deriving benefit therefrom; and the contract with Amerada, which was the basis for such drilling, directly resulted from services rendered by defendant pursuant to his employment agreement with the plaintiffs.

The basis of defendant's motion for summary judgment herein is that plaintiffs have failed to comply with the statutory requirements for rescission, and have waived the right to rescind.

The motion is made pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., following Section 723c. Subparagraph (c) of this rule provides that "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law", summary judgment may be entered.

It appears to the satisfaction of this Court that there is no genuine issue of fact to be tried, and that defendant is entitled to judgment as a matter of law, for two reasons: First, there is a total absence of any evidence of fraud. This Court is satisfied from an examination of all the pleadings, depositions and affidavits, and specifically from an examination of the plaintiffs' own deposition, that no fraud exists. That, in itself, is dispositive of this case and would entitle the defendant to summary judgment. At best, from the standpoint of plaintiffs, the facts as testified to by them in their deposition concerning the circumstances surrounding the execution and delivery of the deed involved herein might be interpreted as a lack of complete knowledge on their part concerning the same, or as a misunderstanding between the parties hereto. While such testimony seems to the Court almost incredible (and is denied by defendant), if in fact plaintiffs did fail to read the letter constituting the con-

tract of employment and also failed to read the deed, such failure constituted lack of use of ordinary care, and of itself constitutes no evidence of fraud. As between the grantors and grantee, the question of whether the deed was properly acknowledged is immaterial—an estate in realty may be transferred by an instrument in writing subscribed by the grantor, and this deed was valid as between grantors and grantee. Sections 47–1001 and 47–1006, NDRC 1943. Acknowledgment was a pre-requisite to recordation. Section 47–1903, NDRC 1943.

However, this decision is not based solely on the absence of proof of fraud, but also, and primarily, on the fact that plaintiffs have waived their right (if any) to rescind the deed by failing to promptly and with reasonable diligence exercise the same.

■ The conveyance in suit is a North Dakota instrument, and the parties are bound by the laws and decisions of this state. The pertinent statutory provisions are found in the North Dakota Revised Code of 1943, as follows:

Section 9–0901. "Extinction of Contracts. A contract may be extinguished in like manner with any other obligation and also by rescission, alteration, or cancelation to the extent and in the manner provided by this title."

Section 9–0902. "Rescission; When Permitted. A party to a contract may rescind the same in the following cases only:

"1. If the consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through * * fraud * * *."

Section 9–0904. "Rules Governing Rescission. Rescission, when not effected by consent * * * can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

"1. He must rescind promptly upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability and is aware of his right to rescind; and

"2. He must restore to the other party everything of value which he has received from him under the contract or must offer to restore the same upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

■■ The general rule in North Dakota is that the question whether the rescinding party acted with due promptness is one of law for the Court to decide. Fedorenko v. Rudman, N.D., 71 N.W.2d 332. The diligence or promptness required to rescind upon discovering the facts, under the North Dakota statutes, is the same whether the party attempting to rescind relies upon the ground of mistake, duress, menace, fraud, or undue influence. Fedorenko v. Rudman, supra, at page 338.

The Supreme Court of North Dakota, in the Fedorenko case, held that a sixteen-month delay in taking any formal action, after discovery of the true facts, was inexcusable and operated as a waiver of plaintiffs' right to rescind. Indeed, this same Court, in the case of Daniel v. Hamilton, N.D., 61 N.W.2d 281, held that a delay as short as sixty-six days was effective in operating as a waiver of plaintiff's right to rescind.

"Where a party, with knowledge of facts entitled him to rescission of a contract or conveyance, afterward, without fraud or duress, ratified the same, he has no claim to the relief of cancellation. An express ratification is not required in order thus to defeat his remedy; any acts of recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it, have the effect of an election to affirm. Indeed, it has been declared that since the remedy of rescission or cancellation is not held in high esteem by the courts even slight circumstances showing a purpose or in-

tent to waive it will preclude the allowance of such relief." 12 C.J.S., Cancellation of Instruments, § 38, pp. 996, 997.

▮ Rescission of a contract, whether the object of a suit in equity or an action at law, is governed by equitable principles. 17 C.J.S., Contracts, § 413, p. 899.

▮ If rescission on account of fraud is not promptly made, legal justification or excuse for the delay must be shown. Bauer v. National Union Fire Ins. Co., 51 N.D. 1, 198 N.W. 546, 549. In that case it is said:

"The right to rescind is waived by unexcused delay, although no prejudice or injury be shown as a result thereof. * * * We think that the respondent, having wholly failed to offer any evidence in justification or excuse of the delay of a year in rescinding the compromise settlement, has not acted with the promptness required by the statute. A delay of four or five months in rescinding, or offering to rescind, after discovering the fraud, has been held to be fatal by the courts of California, construing a statute identical with our own. [California cases cited.] "

The Supreme Court of North Dakota again indicated, in the case of Kramer v. K. O. Lee & Son Co., 61 N.D. 28, 237 N. W. 166, 171, that promptness was essential in an attempt to rescind a contract and that the plaintiffs in that case had not rescinded promptly as required by the statute. The facts in that case indicate a rescission by the plaintiff was not attempted until some eleven months after the date of the contract in question.

"The power to avoid a transaction voidable for fraud or mistake and the right to restitution dependent thereon are qualified by equitable considerations and must be exercised with due regard for the interests of the transferee and of third persons. Hence if such interests are likely to be adversely affected by a delay in avoidance, the right to restitution is dependent upon a manifestation of an intent to avoid by the transferor made with reasonable promptness. .

"It is not possible to make a useful statement of exact rules which determine the situations in which promptness is required and the time within which an election must be made when it must be made promptly. The following considerations, however, are important. The degree of culpability of the transferee, if any, is of prime importance; less delay will be permitted against an innocent transferee than against one guilty of fraud or duress. * * * The fact that the transferee stood in a fiduciary relationship to the transferor, or that, by promises, duress, absence from the State, or otherwise, he delayed the transferor in making an election, or that the transferor was ignorant of his legal rights as to rescission, or that one of the parties became ill or died is considered in extending the time within which otherwise an election should reasonably have been made." Restatement of the Law, Restitution, pp. 250, 251, 252.

In the instant case there is a total absence of any proof of duress, menace, undue influence, or disability, of either plaintiff, at any time; indeed, there is nothing presented by plaintiffs that can even be interpreted as an excuse for the long delay. Each of plaintiffs is thirty or more years of age; one is a high school graduate, the other a graduate of the eighth grade; each is a successful farmer, can read and write, and is familiar with terminology in the field of oil and gas; both were present, together, during all conferences and discussions that occurred between them and defendant; they failed to express dissatisfaction with, or complain of the transaction involved and failed to take any formal action to rescind for approximately twenty months after they were fully aware of all the facts; they have reaped, and continue to reap, the benefits of the services of defendant pursuant to a contract of employment which has been, on the part of defendant, fully performed; until the commencement of this action, all of the representations and actions of plaintiffs were consistent with the validity of the

conveyance, and wholly inconsistent with an intent to avoid it.

Therefore, in the opinion of this Court, in view of the pertinent statutes of North Dakota as interpreted by the Supreme Court of this state, plaintiffs have procrastinated too long; their delay is fatal and they have thereby waived any right they may have had to rescind.

Defendant's motion for summary judgment is granted.

It is so ordered.