Odell KNOSHAUG and Merrill Knoshaug,
Appellants,

v.

Harold Arnold POLLMAN, Appellee.

No. 15724.

United States Court of Appeals
Eighth Circuit.

June 7, 1957.

Joseph P. Stevens, Minot, N. D., Arthur N. Ohnstad, Fargo, N. D., and Leonell W. Fraase, Tioga, N. D., filed brief for appellants.

Clyde Duffy, Devils Lake, N. D. (Harold A. Pollman and Manuel J. Hoppenstein, Dallas, Tex., and Arthur Stokes, Grand Forks, N. D., were with him on the brief), for appellee.

Before GARDNER, Chief Judge, and VOGEL and VAN OOSTERHOUT, Circuit Judges.

VOGEL, Circuit Judge.

Plaintiffs-appellants brought this action to set aside and have declared null and void a certain deed to 8 mineral acres executed by them and given to the defendant-appellee as a contingent fee for legal services. Motion for summary judgment by the appellee was granted. This appeal followed.

Suit was originally commenced in the State District Court of North Dakota. Diversity of citizenship and the requisite amount prompted removal to the federal court.

From the pleadings and the depositions of the two appellants, the following facts, which formed the basis for the trial court's granting of appellee's motion for summary judgment, appear in the record without dispute: In August, 1953, the appellants, two brothers, who owned 280 acres of land in the Tioga area, sought the advice and assistance of the appellee, a practicing attorney, in securing the drilling of an oil well on one 40-acre tract owned by them and under lease to Amerada Petroleum Company. Their land was apparently being drained by a neighboring well and they desired to

secure an "off-set" well. An agreement was entered into between the parties whereby a contingent fee of 4 mineral acres out of the 40-acre tract was to be given appellee for his services. A mineral deed for 4 mineral acres running from the appellants to the appellee was executed and delivered with the understanding that the deed was not to be effective until the desired well was obtained. Thereupon, the appellee began negotiations with Amerada, which negotiations continued until the beginning of October, 1953. Appellee was unsuccessful in getting Amerada to agree to the drilling of a well as first proposed. Amerada insisted on unitization with a neighboring tract as a condition to drilling. Appellants then suggested a counter proposal providing for the drilling of two wells, one on the 40-acre tract which they agreed to unitize, provided a second well on another tract of 240 acres located some distance from the 40-acre tract was also drilled. The matter of appellee's fee in connection with the second proposition was then discussed and on October 5, 1953, the appellants signed a letter prepared in the appellee's office directed to him, containing the following:

> "This memorandum will witness our understanding that you may negotiate with Amerada on the basis of Unitizing that 40 acre tract with the Northwest Quarter of the Southwest Quarter of Section Thirty in Township 158 North Range 94 West only upon receiving a commitment from Amerada to commence in a reasonably short time (about 60 days) the drilling of an additional well on our tract of land in Section 32, Township 158 North Range 94 West.

> "Further, in view of the fact that your compensation will be in acreage over the unitized tract, our conveyance to you is to be 8/40ths of the SW¼ SW¼ of Section 30, Township 158 North Range 94 West, (Intending eight mineral acres)."

At the same time, October 5, 1953, the appellants signed another deed conveying to the appellee 8 mineral acres out of the 40-acre tract, recordation to be delayed until after Amerada commenced drilling operations. At this meeting the unrecorded 4-acre deed was cancelled and marked void. Two days thereafter, on October 7, 1953, the two appellants returned to the appellee's office, inquired and were informed that the deed they had signed two days prior thereto was for 8 mineral acres. Appellants testified that they were dissatisfied but made no complaint, thinking they were "stuck". In company with the appellee the appellants thereafter had a conference with various officers of Amerada Petroleum Company and entered into a contract with them whereby Amerada agreed to drill the two oil wells proposed by the appellants, one on the 40-acre tract and one on the 240-acre tract. As a result of that contract, Amerada promptly drilled and completed a producing well on the 40-acre tract. Shortly thereafter Amerada drilled and completed the second well on the 240-acre tract, which produced oil in January, 1954. Later appellants received a division order forwarded to them from Stanolind Oil Purchasing Company and noted that it showed 8 mineral acres belonging to the appellee. They nevertheless signed the division order as "correctly" setting forth their interest. They received royalty checks on that basis. About a year later they received a natural gas division order which they did not sign.

Prior to the commencement of this action on May 18, 1955, the appellants did not register any complaint with the appellee or with Amerada or Stanolind. In other words, after becoming fully aware of all the facts and that they had executed a mineral deed conveying 8 mineral acres to the appellee as his fee for arranging the drilling of two wells on their property and being dissatisfied therewith, they nevertheless failed to take any action to rescind for approximately 20 months. During that period they received and continued to receive benefits from the employment of the appellee and the two oil wells drilled on their land as a result of his activities.

Appellants, by this suit, sought to rescind their contract with the appellee and to have the deed which they executed declared null and void and they allege fraud on the part of the appellee in the procurement of the deed.

In granting the appellee's motion for summary judgment (Knoshaug v. Pollman, 148 F.Supp. 16, 22, 23), the District Court stated:

"Each of plaintiffs is thirty or more years of age; one is a high school graduate, the other a graduate of the eighth grade; each is a successful farmer, can read and write, and is familiar with terminology in the field of oil and gas; both were present, together, during all conferences and discussions that occurred between them and defendant; they failed to express dissatisfaction with, or complain of the transaction involved and failed to take any formal action to rescind for approximately twenty months after they were fully aware of all the facts; they have reaped, and continue to reap, the benefits of the services of defendant pursuant to a contract of employment which has been, on the part of defendant, fully performed; until the commencement of this action, all of the representations and actions of plaintiffs were consistent with the validity of the conveyance, and wholly inconsistent with an intent to avoid it.

"Therefore, * * * in view of the pertinent statutes of North Dakota as interpreted by the Supreme Court of this state, plaintiffs have procrastinated too long; their delay is fatal and they have thereby waived any right they may have had to rescind."

The applicable statutes of the State of North Dakota are as follows: North Dakota Revised Code of 1943:

"*9–0902. Rescission; When Permitted.* A party to a contract may rescind the same in the following cases only:

"1. If the consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through * * * fraud * * *."

"*9–0904. Rules Governing Rescission.* Rescission, when not effected by consent * * * can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

"1. He must rescind promptly upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability and is aware of his right to rescind; and

"2. He must restore to the other party everything of value which he has received from him under the contract or must offer to restore the same upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

The District Court stated, at page 21 of 148 F.Supp.:

"The general rule in North Dakota is that the question whether the rescinding party acted with due promptness is one of law for the Court to decide. Fedorenko v. Rudman, N.D., 71 N.W.2d 332. The diligence or promptness required to rescind upon discovering the facts, under the North Dakota statutes, is the same whether the party attempting to rescind relies upon the grounds of mistake, duress, menace, fraud, or undue influence. Fedorenko v. Rudman, supra, at page 338."

In the Fedorenko v. Rudman case, supra, the North Dakota Supreme Court held that a 16-month delay in bringing formal action was a waiver of the right to rescind. Again, in Daniel v. Hamilton, N.D.1953, 61 N.W.2d 281, the same court held under the circumstances there that a delay of 66 days was fatal. In neither of these cases does the North

**274**

Dakota court attempt to fix absolute time requirements for bringing rescission actions but rather gives due regard to each factual situation. See also Kramer v. K. O. Lee & Son, 1931, 61 N.D. 28, 237 N.W. 166, and Bauer v. National Union Fire Ins. Co., 1924, 51 N.D. 1, 198 N.W. 546, 549.

We have, then, this situation: By the appellants' own testimony it is uncontroverted that on October 7, 1953, they were aware of the fact that they had signed a deed for 8 mineral acres, representing a contingent fee for the appellee's services in getting two oil wells drilled on their properties; that while dissatisfied, they thought they were "stuck"; that with this knowledge they, in company with the appellee, negotiated for and entered into a contract with Amerada for the drilling of the two wells; that the two wells were drilled and produced oil; that they thereafter signed a division order from Stanolind Oil Purchasing Company showing appellee as the owner of 8 mineral acres; that they continued to receive and accept royalty checks based upon such division; that after complete knowledge of the facts and being dissatisfied therewith, they nevertheless waited for a period of 20 months before taking any action to set aside or rescind the deed which they claim was procured by fraud. The trial court was correct in holding under these circumstances "that plaintiffs have waived their right (if any) to rescind the deed by failing to promptly and with reasonable diligence exercise the same".

In addition to having waived their rights by unreasonable delay, it must be pointed out that the appellants also ratified the contract after admittedly becoming aware of its terms. They continued to use the appellee's services for which they were then aware they had contracted to pay a contingent fee of 8 mineral acres. This alone was sufficient to indicate ratification, but in addition thereto appellants knowingly signed as correct a division order from Stanolind which showed 8 mineral acres belonging to the appellee, and they accept-ed royalty checks on such divisional basis. Their actions amounted to ratification subsequent to knowledge. See Daniel v. Hamilton, supra, 61 N.W.2d at pages 288 and 289; 12 C.J.S. Cancellation of Instruments § 38, pp. 996, 997. We hold that the trial court's determination that on this record no genuine issue remained in the case and that the appellee was entitled to judgment as a matter of law was eminently correct.

Affirmed.